OPINION
{¶ 1} Appellant Shannon Irwin was convicted and sentenced in the Mahoning County Court of Common Pleas on three counts of felonious assault. She was convicted of assaulting Mr. Edward Hoopes on three occasions in May, June and July of 2004. On appeal, she challenges the trial court's decision to allow a deposition of the victim to be entered into evidence. The victim was dying from Lou Gehrig's disease and his testimony was preserved for trial pursuant to Crim.R. 15. The victim died prior to trial. Appellant argues that the use of the deposition at trial violates the Sixth Amendment right to confront witnesses in light of the recent United States Supreme Court case of Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.Crawford allows testimonial hearsay evidence to be admitted if the witness is unavailable and if there was an opportunity to cross-examine the witness, both of which apply to the deposition testimony of the victim. Therefore, Appellant's argument is unpersuasive. Appellant also challenges the sufficiency and manifest weight of the evidence, but the evidence clearly indicates that the victim sustained specific injuries that correspond to the three counts in the indictment. Appellant raised two additional errors pro se. The first alleges ineffective assistance of trial counsel, but the allegations involve evidence that is outside of the record, and as such, cannot be reviewed on direct appeal. The second challenges the sentence based on State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Sentencing occurred prior toFoster and relied on sentencing statutes found to be unconstitutional inFoster. Therefore, the sentence must be vacated, and resentencing is hereby ordered pursuant to Foster. *Page 2 
 PROCEDURAL HISTORY {¶ 2} Appellant was arrested in the early morning hours of July 7, 2004, after the police were called to her home and found that Edward Hoopes, her fiancé, had sustained multiple injuries. The neighbors called the police because they had heard someone crying in Appellant's home for several nights in a row. The police tried to find out from Mr. Hoopes what had happened, and Appellant continuously interrupted by saying "Tell the officers you fell." (Tr., p. 349.) Appellant identified herself as Mr. Hoopes' caregiver. Mr. Hoopes was "scared to death" and the officers decided he needed to go the hospital. After some questioning, Mr. Hoopes told the police that Appellant had been abusing him. (Tr., p. 351.) The police then called for an ambulance, and transported Appellant and her son Travis to the police department.
 {¶ 3} Appellant was indicted on September 2, 2004, on felonious assault. A superseding indictment was issued on December 16, 2004, that included three counts of felonious assault, R.C. 2903.11(A)(1), all second degree felonies. The first count was for the assault on July 7, 2004. The second and third counts were for assaults committed in May and June, respectively, of 2004.
 {¶ 4} On January 25, 2005, the state filed a Crim.R. 15 motion to perpetuate testimony, so that a deposition of the victim, Edward Hoopes, could be prepared to use at trial. Edward Hoopes suffered from amyotrophic lateral sclerosis, commonly known as Lou Gehrig's disease, a debilitating and ultimately fatal neuromuscular disease. The trial court granted the state's motion on January 26, 2005, and ordered that the deposition be videotaped. The deposition took place on February 18, 2005. *Page 3 
The deposition was later transcribed by court reporter Alisha Glasgow. Although the exact date is not clear from the record, sometime after this deposition was taken, but prior to trial, Mr. Hoopes died.
 {¶ 5} The case went to jury trial on December 12, 2005. The state requested that the videotaped deposition of the victim, Mr. Hoopes, be admitted into evidence, but the trial court only allowed for the transcribed deposition testimony to be read to the jury. The court decided that the deposition videotape showed Mr. Hoopes in such an advanced stage of Lou Gehrig's disease that it would be unduly prejudicial to the defendant, but the court did not find any reason for prohibiting the deposition to be read to the jury. (Tr., p. 371.) Defense counsel objected that he did not have a meaningful ability to cross-examine Mr. Hoopes based on the debilitating effect of Lou Gehrig's disease. The court overruled the objection.
 {¶ 6} The state called a variety of other witnesses, including Appellant's son, Travis Irwin, who was present during many of the attacks and actually assaulted Mr. Hoopes at least once. The state's witnesses included the arresting officers, the EMT who attended Mr. Hoopes on July 7, 2004, Appellant's next-door neighbors, a fellow inmate of Appellant's, and two of Edward Hoopes' doctors.
 {¶ 7} The jury found Appellant guilty of the three charges on December 15, 2005. The court held a sentencing hearing on January 13, 2006, and the judgment entry of sentence was filed the same day. The court imposed maximum consecutive sentences for the crimes, eight years on each count, for a total sentence of 24 years in prison. This timely appeal followed on February 10, 2006. After the briefs were *Page 4 
filed, Appellant filed a pro se supplement to the brief, which was accepted by this Court on April 19, 2007.
 ASSIGNMENT OF ERROR NO. ONE {¶ 8} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND AN ABUSE OF DISCRETION BY PERMITTING THE INTRODUCTION OF THE TRANSCRIPT OF THE ALLEGED VICTIM'S DEPOSITION AT THE TRIAL OF THIS CAUSE IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 9} Appellant's first argument is that the trial court should not have permitted the state to introduce into evidence the deposition of the victim, Mr. Hoopes, who died prior to trial. Appellant contends that her Sixth Amendment right to confront the witness was violated. At trial, counsel argued that he was not able to meaningfully cross-examine Mr. Hoopes during the deposition, and that this was the constitutional violation. (Tr., pp. 368ff.) Appellant changes this argument on appeal, contending that the prosecutor violated the confrontation clause by using leading questions during the direct exam of Mr. Hoopes.
 {¶ 10} Appellant's argument on appeal does not ultimately appear to implicate the confrontation clause of the Sixth Amendment. Nevertheless, a review of the confrontation clause is necessary to make sense of the argument that is presented. The Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" One aspect of the confrontation clause prohibits hearsay testimonial statements from being *Page 5 
introduced at trial unless the witness is unavailable and unless the defendant has the right to cross-examine the witness regarding the hearsay testimony. Crawford v. Washington, supra, 541 U.S. 36,124 S.Ct. 1354, 158 L.Ed.2d 177. Crawford overturned Ohio v. Roberts (1980),448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, which had allowed hearsay testimony if the hearsay statements satisfied "firmly rooted" hearsay exceptions or were otherwise deemed to possess "particularized guarantees of trustworthiness." Id. at 66, 100 S.Ct. 2531,65 L.Ed.2d 597. Under the new rule established by Crawford, the first question to be asked is whether the hearsay evidence is testimonial, and after establishing that fact, it must be determined whether the witness was unavailable for trial and whether there was an opportunity for cross-examination.
 {¶ 11} Appellant's argument on appeal has nothing to do with cross-examining Mr. Hoopes, or his availability for trial, or any other issue involving the confrontation clause. Appellant objects to the manner of the direct examination of Mr. Hoopes, namely, the use of leading questions. There is no question that Mr. Hoopes' deposition testimony consists almost entirely of "yes" and "no" answers to leading questions from both the prosecutor and from defense counsel. Whether those leading questions have any constitutional implications is another matter altogether.
 {¶ 12} "A leading question `instructs [the] witness how to answer or puts into his mouth words to be echoed back.'" State v. D'Ambrosio
(1993), 67 Ohio St.3d 185, 190, 616 N.E.2d 909, 915, quoting Black's Law Dictionary (6 Ed.1990) 888. Evid.R. 611(C) states that, "[l]eading questions should not be used on the direct *Page 6 
examination of a witness except as may be necessary to develop his testimony." "[I]t is within the trial court's discretion to allow leading questions on direct examination." State v. Jackson (2001),92 Ohio St.3d 436, 449, 751 N.E.2d 946. The trial court's ability to control the use of leading questions is part of the court's overall authority to regulate the trial process, including the mode and order of interrogating witnesses, the presentation of evidence, the prevention of unnecessary delay in the course of the trial, and the protection of the witnesses from unnecessary harassment and embarrassment. Evid.R. 611(A);State v. Warren (1990), 67 Ohio App.3d 789, 796, 588 N.E.2d 905.
 {¶ 13} Leading questions are permitted, and even expected, in many circumstances during direct examination of witnesses. Leading questions may be used to develop testimony, to direct the witness to the specific topics of inquiry, when a witness becomes a hostile witness, if the witness is a child of tender years, or even when a witness is nervous and is straining to answer the questions. State v. Smith (1997),80 Ohio St.3d 89, 111, 684 N.E.2d 668; State v. Brown (1996),112 Ohio App.3d 583, 599, 679 N.E.2d 361; State v. Holt (1969), 17 Ohio St.2d 81, 83,246 N.E.2d 365.
 {¶ 14} There was no objection to the use of leading questions at the time the deposition took place or at trial. In fact, Appellant's counsel stated at trial: "If the Court wants — if they want to read the deposition into the record, that's all right with me." (Tr., p. 369.) Appellant has waived all errors except for plain error regarding *Page 7 
the prosecutor's use of leading questions in deposing Mr. Hoopes. See, e.g., D'Ambrosio, supra, at 190.
 {¶ 15} At deposition, it was apparent that Mr. Hoopes was going to have great physical difficulty participating, and thus, the prosecutor used many leading questions to facilitate the deposition process. There is no question that Mr. Hoopes was dying of an incurable neuromuscular disease when the deposition was taken, and that he actually did die shortly after the deposition was taken. If Mr. Hoopes had been giving his testimony in open court at trial, it would certainly have been within the discretionary power of the trial judge to allow leading questions to accommodate Mr. Hoopes' illness. There does not appear to be any error, much less plain error, in the prosecutor's use of leading questions when taking the deposition of Mr. Hoopes.
 {¶ 16} Although there may be some question about constitutional due process in the use of leading questions on direct exam by the prosecution, there is not a confrontation clause issue. Appellant's counsel was present at the deposition and actually did cross-examine Mr. Hoopes. Whether counsel believes that cross-examination might have been more effective is a separate question from whether the use of leading questions by the prosecutor was appropriate. As Appellee accurately points out, the meaningfulness or effectiveness of cross-examination is generally not a part of confrontation clause analysis. The only question regarding cross-examination that matters is whether there was an opportunity for cross-examination. Crawford, supra, 541 U.S. at 68,124 S.Ct. 1354, 158 L.Ed.2d 177. Even if the *Page 8 
defendant completely fails to cross-examine a witness, as long as the opportunity for cross-examination existed, the confrontation clause is protected.
 {¶ 17} The record indicates that Mr. Hoopes was capable of giving basic affirmative or negative responses to leading questions at his deposition. Cross-examination consists largely of leading questions that require only short answers, and Appellant's cross-examination of Mr. Hoopes was no exception. See Evid.R. 611(C). The basic right contained in the confrontation clause, the right to cross-examine a witness, exists so that the defendant may test the accuracy, truthfulness and credibility of the testimony given on direct examination. Smith v.Mitchell (1988), 35 Ohio St.3d 237, 239, 520 N.E.2d 213. The record indicates that Appellant's counsel asked Mr. Hoopes approximately 20 questions, and that Mr. Hoopes answered them all. Counsel had to ask Mr. Hoopes to speak louder once, but other than that, the record shows that Mr. Hoopes answered all of counsel's questions, and there is no indication that counsel was prevented from asking any questions. There is no mention that Mr. Hoopes was confused, was too tired to answer counsel's questions, or was unwilling to continue with the cross-examination for any reason. Thus, even if the meaningfulness of cross-examination were an issue under the confrontation clause, the record in this case fails to disclose any problem with the cross-examination process.
 {¶ 18} It should be also kept in mind that Crawford explicitly preserved the principle that an accused has forfeited his confrontation right where the accused's own misconduct is responsible for a witness's unavailability. Crawford at 62, *Page 9 124 S.Ct. 1354, 158 L.Ed.2d 177 ("[t]he rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability"). See, also, Reynolds v. United States (1879),98 U.S. 145, 158, 25 L.Ed. 244 (if a witness is unavailable because of the defendant's own misconduct, "he is in no condition to assert that his constitutional rights have been violated"). Appellant was charged with multiple counts of assault against a man already dying from Lou Gehrig's disease. Appellant is now arguing that her confrontation rights have been violated because the victim was not available for trial (because he died) and because Mr. Hoopes' poor physical condition prevented him from giving complete answers at his deposition. It can certainly be argued that the various acts of assault, including beatings to his head, body, and groin, contributed to Mr. Hoopes' deteriorating condition. In fact, this was established at trial. (Tr., p. 315.) It is exceedingly difficult to accept the argument that Appellant could repeatedly assault a dying man and also demand to have the victim's deposition testimony excluded from trial on the grounds that his poor health created a confrontation clause violation.
 {¶ 19} Appellant adds another layer to this argument on appeal, suggesting that the confrontation clause was also violated because she was not able to cross-examine the court reporter who recorded the deposition. More precisely, Appellant argues that the court reporter's affidavit, which is contained in the court file but was not admitted as evidence at trial, was not subject to cross-examination. Court reporter Alisha Glasgow averred that she was able to accurately record what Mr. *Page 10 
Hoopes said during the deposition, and that she checked the video of the deposition to be sure the typed recording was accurate. (11/16/05 Affidavit.) Appellant apparently questions the veracity of those statements.
 {¶ 20} This argument is more than a little confusing because the affidavit was not submitted as evidence at trial. Only the transcribed deposition was read aloud at trial. After the deposition was read to the jury, the jury left the courtroom. (Tr., p. 393.) The judge then returned the typed deposition to the court reporter, along with Ms. Glasgow's affidavit. (Tr., p. 393.) Appellant's counsel then said: "Note my objection for the record that that affidavit's not subject to cross examination." (Tr., p. 393.) The court stated: "I didn't know whether we wanted to preserve the record or not." (Tr., pp. 393-394.) Defense counsel then stated: "Yeah. That's just for the record." (Tr., p. 394.) Based on this dialogue, it appears that Appellant is asking us to answer an abstract question, namely, if the affidavit of the court reporter had been admitted at trial, it would have violated the confrontation clause of the Sixth Amendment. We do not normally respond to mere abstract issues or give advisory opinions. State v. Vlad, 153 Ohio App.3d 74,2003-Ohio-2930, 790 N.E.2d 1246, ¶ 21.
 {¶ 21} Appellant argues that he had a right to confront the court reporter because she may not have understood what Mr. Hoopes said during the deposition. Appellant attempts to relate this argument to theSixth Amendment confrontation clause. The United States Supreme Court has consistently held that, "[t]he right to confrontation is basically a trial right. It includes both the opportunity to cross- *Page 11 
examine and the occasion for the jury to weigh the demeanor of the witness." Barber v. Page (1968), 390 U.S. 719, 725, 88 S.Ct. 1318,20 L.Ed.2d 255; see also, Mattox v. United States (1895), 156 U.S. 237,244, 15 S.Ct. 337, 39 L.Ed. 409; Crawford, supra, 541 U.S. at 57,124 S.Ct. 1354, 158 L.Ed.2d 177; State v. Keairns (1984), 9 Ohio St.3d 228,460 N.E.2d 245.
 {¶ 22} Appellant is correct that Crawford has a bearing on her assignment of error because Crawford, and the entire legal history of the confrontation clause, reveals the right of confrontation is a trial right. Neither Appellant nor the state called the court reporter as a witness at trial. No one introduced the court reporter's affidavit at trial. There is no indication in the record that Appellant tried to have the court reporter testify or even thought about having her testify. Thus, no act occurred at trial to trigger the confrontation clause with respect to the court reporter.
 {¶ 23} Appellant's two arguments are without merit and this assignment of error is overruled.
 ASSIGNMENTS OF ERROR NOS. TWO AND THREE {¶ 24} "APPELLANT'S CONVICTIONS ON TWO COUNTS OF FELONIOUS ASSAULT FOR THE MONTHS OF MAY AND JUNE 2004 VIOLATE THE UNITED STATES AND OHIO CONSTITUTION AS THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS AS A MATTER OF LAW."
 {¶ 25} "THE VERDICT REACHED BY THE JURY ON ALL THREE COUNTS OF FELONIOUS ASSAULT VIOLATE THE UNITED STATES AND *Page 12 
OHIO CONSTITUTION SINCE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 26} Appellant argues that the evidence at trial only supports, at best, that the victim, Mr. Hoopes, suffered minor injuries in May and June of 2004, and that he was hospitalized on July 7, 2004, for some sort of injuries sustained earlier that day. Appellant contends that there are no specific details that support a conclusion that Mr. Hoopes suffered "serious physical harm" in May or June, as required by the felonious assault statute. Furthermore, Appellant contends that while her son, Travis Irwin, provided the crucial evidence to support the verdict for the attack that occurred in July, Travis provided this testimony in exchange for a plea bargain in which he believed he would obtain probation instead of a prison term. Appellant thus argues that Travis' testimony is not credible. Appellant concludes that all three counts should be dismissed because the evidence does not support the verdicts.
 {¶ 27} Appellant is challenging both the sufficiency and the manifest weight of the evidence. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, citing State v. Robinson (1955),162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In this inquiry, a reviewing court must determine whether the state has met its burden of production at trial. The court is to assess, "not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Thompkins,78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring.) After viewing the evidence in a light most favorable to the prosecution, *Page 13 
the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Smith (1997), 80 Ohio St.3d 89, 113,684 N.E.2d 668, citing State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 28} Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d 541. When reviewing the manifest weight of the evidence, the court sits as a "thirteenth juror" and makes an independent review of the record. Id. In performing this function, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 29} Counts two and three of the indictment allege that Appellant committed felonious assault in May and June of 2004. Generally speaking, the exact date and time that the alleged crime occurred is not an element of the crime nor an essential fact at trial. Tesca v. State
(1923), 108 Ohio St. 287, 140 N.E. 629, paragraph one of the syllabus. It is normally sufficient for the state to prove that the alleged offense *Page 14 
occurred, "at some time prior to the time of the filing of the indictment." State v. Sellards (1985), 17 Ohio St.3d 169, 171,478 N.E.2d 781. Pursuant to R.C. 2941.05, an indictment generally is sufficient if it contains a statement that the accused has committed some public offense. The essence of Appellant's challenge of the sufficiency of the evidence, then, is that the evidence does not support that more than one crime took place.
 {¶ 30} The indictment states that Appellant caused serious physical harm to Mr. Hoopes in violation of R.C. 2903.11(A)(1), constituting second degree felonies. "Serious physical harm" is defined in R.C.2901.01(A)(5) as:
 {¶ 31} "(5) `Serious physical harm to persons' means any of the following:
 {¶ 32} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 33} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 34} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 35} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 36} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 37} Strangely, Appellant appears to concede that Mr. Hoopes sustained at least minor injuries in May and June of 2004. The only issue seems to be how *Page 15 
extensive the injuries were, and yet, the extent or degree of the injuries is normally a matter of the weight rather than the sufficiency of the evidence. State v. Salemi, 8th Dist. No. 81091, 2002-Ohio-7064, ¶ 34. The degree of harm that rises to level of "serious" physical harm is not an exact science, particularly when the definition includes such terms as "substantial," "temporary," "acute," and "prolonged." One court has held that serious physical harm is established, "where there were bruises around a child's buttocks and back, described as moderate, purple and red in color, and somewhat raised and swollen * * *."State v. Krull, 154 Ohio App.3d 219, 2003-Ohio-4611, 796 N.E.2d 979, ¶ 22, citing State v. Burdine-Justice (1998), 125 Ohio App.3d 707,709 N.E.2d 551. When the victim has other health problems that makes the victim susceptible to complications from injuries, mere evidence of bruising over a period of time can sustain a finding of serious physical harm. State v. Rockwell (1992), 80 Ohio App.3d 157, 172,608 N.E.2d 1118.
 {¶ 38} In this case, it was made quite clear at trial that the victim suffered from Lou Gehrig's disease, a particularly debilitating and fatal neuromuscular disease, first diagnosed in October, 2003. (Tr., p. 373.) Mr. Hoopes testified that he met Appellant at work. They dated and became engaged, and lived together in Sebring, Ohio. He spent some time in the hospital due to his disease, and then returned to live with Appellant. He testified that in May of 2004, Appellant began to beat him. (Tr., p. 377.) The beatings continued "off and on" through July, 2004. (Tr., p. 377.) Nurses tried to visit Mr. Hoopes, but Appellant would not permit them to see him. (Tr., p. 377.) Appellant used her fists and elbows at first, and hit him in the face, chest and *Page 16 
back. (Tr., p. 378.) When she hit him in the chest, he had trouble breathing. (Tr., p. 378.) On July 7, 2004, she broke a coffee cup over his head. (Tr., p. 379.) Mr. Hoopes was taken to the hospital on July 7, 2004, and afterward was sent to a nursing home. After these beatings, he was not able to use his arms, operate his television remote control, or walk. (Tr., p. 382.) Mr. Hoopes has scars from the beatings. Mr. Hoopes specifically testified that bruising occurred in both May and June of 2004. (Tr., p. 388.)
 {¶ 39} Fourteen-year old Travis Irwin, Appellant's son, testified that in May, 2004, Mr. Hoopes began wearing sunglasses to cover up bruises on his face. (Tr., p. 266.) Appellant confessed to Travis that she repeatedly hit Mr. Hoopes in the face. (Tr., p. 268.) Appellant was apparently jealous because she believed that Mr. Hoopes was looking at or paying attention to other women. Travis began to see bruises, "all over his chest and arms." (Tr., p. 267.) The bruises were black, blue and brownish all over Mr. Hoopes' body. (Tr., p. 268.) Travis testified that he saw Appellant hit Mr. Hoopes with her fists, elbows, and knees. (Tr., p. 269.) Mr. Hoopes told Appellant to stop the beatings because they hurt. (Tr., pp. 275-276.)
 {¶ 40} Sometime in June, 2004, Appellant stopped using her fists, and began using her palms, along with her elbows, knees, and legs. (Tr., p. 270.) Appellant told Travis that she stopped using her fists because they hurt too much from hitting Mr. Hoopes repeatedly. (Tr., p. 270.) Travis testified that he witnessed beatings two or three times per week in June, 2004. (Tr., p. 271.) Also in June, Appellant began using a metal broomstick to beat Mr. Hoopes. (Tr., p. 272.) Appellant hit Mr. Hoopes *Page 17 
so hard that she dented the broomstick. (Tr., p. 272.) Appellant used the broomstick to hit Mr. Hoopes in the legs and groin.
 {¶ 41} Travis testified about the events of July 7, 2004. He heard and saw Appellant hitting and kicking Mr. Hoopes. (Tr., p. 278.) He saw wet blood on Mr. Hoopes legs and penis. (Tr., p. 279.)
 {¶ 42} Travis admitted that he himself hit Mr. Hoopes once during June of 2004 with a plastic hockey stick. (Tr., p. 274.) He testified that he was arrested and charged with a crime on July 7, 2004, and that he was testifying as part of a plea agreement in which he would be put on probation. (Tr., p. 281.) He testified that he hit Mr. Hoopes because of bad things that Appellant told him about the victim, and because his mother encouraged him to hit Mr. Hoopes. He was also afraid that he might receive the same type of beatings from his mother if he did not do what she said. (Tr., p. 292.) Travis testified that he was twelve years old when these events took place. (Tr., p. 294.)
 {¶ 43} There are many other facts in the record indicating the numerous injuries Mr. Hoopes sustained on July 7, 2004, including photos and medical reports. Kimberly Gorby, the EMT who attended Mr. Hoopes on July 7, 2004, testified that Mr. Hoopes was black and blue from head to toe, had lacerations on his head, cigarette burns on his legs, and a bleeding and disfigured penis and scrotum. (Tr., p. 301.) Dr. Ashraf Ahmed, one of Mr. Hoopes' doctors, testified that there is no cure for Lou Gehrig's disease, and that the injuries inflicted by Appellant accelerated his condition and contributed to his death. (Tr., pp. 318-319.) Bonnie Greenawalt testified that *Page 18 
she met Appellant in jail in October, 2004, and Appellant showed her some pictures of the injuries Mr. Hoopes sustained on July 7, 2004. Appellant admitted to Ms. Greenawalt that she caused those injuries. (Tr., p. 363.) Ms. Greenawalt testified that Appellant was laughing about her attack on Mr. Hoopes, and admitted that she hit him with a pool stick and a cup, and that she bit a chunk out of Mr. Hoopes' groin. (Tr., p. 364.)
 {¶ 44} The evidence, if believed by the jury, was more than sufficient to sustain three counts of felonious assault. Mr. Hoopes was attacked over a three-month time period in 2004, on a continuing basis. He was prevented from seeking health care for his injuries, which was particularly disturbing since he was already suffering from an incurable neuromuscular disease while these attacks were taking place. The consistent testimony of Mr. Hoopes, Travis Irwin, and others indicate that Appellant was responsible for these numerous injuries. There is nothing particularly incredible about Travis Irwin's supporting testimony. He was a twelve-year old boy being forced to watch and ultimately participate in the crimes against Mr. Hoopes. Appellant was telling him vicious stories about Mr. Hoopes, and he was afraid he might be the next victim, so he did not call the police and he also assaulted Mr. Hoopes at least once. That Travis testified pursuant to some type of negotiated plea is only one matter for the jury to weigh in evaluating the importance of his testimony. State v. Lewis, 8th Dist. No. 81957, 2003-Ohio-3673, at ¶ 41.
 {¶ 45} To reverse a jury verdict on the weight of the evidence, the record must demonstrate a manifest miscarriage of justice. The fact that essential elements of *Page 19 
the crime are supported by the testimony of an accomplice, and the fact that such testimony might be induced by a favorable plea agreement, is not in and of itself a manifest miscarriage of justice worthy of reversal. State v. Pearson, 7th Dist. No. 01-JE-22, 2003-Ohio-1073, ¶ 7. In the instant case, Travis was not simply an accomplice, but also a child who had no choice but to see and hear the events that were taking place around him. While it is possible that Travis gave untruthful testimony, the testimony itself is not inherently incredible and the jury could have reasonably relied upon it in reaching its verdict.
 {¶ 46} Based on the evidence in the record, there was sufficient evidence to support that two counts of felonious assault occurred in May and June of 2004. The manifest weight of the evidence also supports that Appellant committed these assaults against Mr. Hoopes and an assault on July 7, 2004. Appellant's second and third assignments of error are overruled.
 SUPPLEMENTAL ASSIGNMENTS OF ERRORS {¶ 47} Appellant's pro se addendum to the appeal does not specifically set forth assignments of errors. Instead, it raises two issues in a very general fashion that are not in the initial brief. The first issue is whether her trial counsel was ineffective for failing to pursue other defenses and trial strategies. Appellant contends that trial counsel should have let her take the witness stand, and should have presented evidence about the side effects of certain medications or drugs that she allegedly takes. *Page 20 
 {¶ 48} To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; accord State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In order to show deficient performance, defendant must prove that his counsel's performance fell below an objective level of reasonable representation. Bradley at 142,538 N.E.2d 373. To show prejudice, defendant must show a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. Id. at 143, 538 N.E.2d 373.
 {¶ 49} Appellant is questioning her counsel's trial tactics, and trial tactics do not normally establish ineffective assistance of counsel. "[A] defendant is not deprived of effective assistance of counsel when counsel chooses, for strategical reasons, not to pursue every possible trial tactic." State v. Brown (1988), 38 Ohio St.3d 305, 319,528 N.E.2d 523. Furthermore, the alleged evidence that Appellant relies upon is not part of the record. This is not the forum to present new evidence regarding possible defenses that might have been used at trial. Where the evidence supporting a claim of ineffective assistance of appellate counsel is de hors the record, there is nothing to review on direct appeal, and postconviction relief proceedings may be more appropriate to pursue such matters. See, e.g., State v. Hartman (2001),93 Ohio St.3d 274, 299, 754 N.E.2d 1150; State v. Madrigal (2000), *Page 21 
21-87 Ohio St.3d 378, 390-391, 721 N.E.2d 52; State v. Carter (2000),89 Ohio St.3d 593, 606, 734 N.E.2d 345.
 {¶ 50} Appellant's second argument is that her sentence is unconstitutional because it was based on findings that the trial court made rather than findings made by the jury, and because it relied on statutes that have since been declared unconstitutional. Appellant is correct. The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees the right to a trial by jury, which includes the requirement that a jury, rather than the judge who is imposing the sentence, make all factual findings essential to impose punishment for the crimes that form the basis of the conviction. Appellant cites a line of cases that have invalidated a variety of felony sentencing laws based on statutorily required judicial fact-finding that violates the right to a jury trial, including Apprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435; Ring v. Arizona (2002), 536 U.S. at 602,122 S.Ct. 2428, 153 L.Ed.2d 556; Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403; and United States v. Booker (2005),543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621. The Ohio Supreme Court determined in Foster, supra, that Ohio's felony sentencing statutes also violated the Sixth Amendment because the trial judge, rather than the jury, was required to make certain findings to impose any sentence above the minimum sentence set forth in the sentencing statutes. As a remedy, the Supreme Court severed the statutory provisions requiring judicial fact-finding and retained the *Page 22 
remainder of the sentencing code which provided for judicial discretion within the full range of sentences authorized by the jury verdict.
 {¶ 51} The remedy provided by Foster for cases on direct review is that the sentence will be vacated and the case remanded to the trial court for a new sentencing hearing. It is clear in this case that the trial court relied on sentencing statutes that have since been declared unconstitutional, and therefore, the part of this assignment of error dealing with sentencing is found to have merit and requires that the sentence be vacated.
 CONCLUSION {¶ 52} Appellant's first three assignments of error are without merit. The deposition testimony of the victim satisfied the requirements of the confrontation clause of the Sixth Amendment because the victim was unavailable at trial (he had died), and because Appellant had an opportunity, and in fact, did cross-examine the victim during the deposition. The record also contains substantial evidence to support all three counts of felonious assault. Appellant's first supplemental argument is without merit because she attempted to prove ineffective assistance of counsel by reference to facts outside the record. Appellant's second supplemental assignment of error, though, has merit based on State v. Foster, supra. Therefore, the convictions for three counts of felonious assault is affirmed, but Appellant's sentence is vacated and the case is hereby remanded to the trial court for resentencing consistent with Foster.
 Vukovich, J., DeGenaro, P.J., concurs. *Page 1