[Cite as *State v. Fitzgerald*, 2017-Ohio-2717.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2016-06-044 |
| | : | O P I N I O N |
| - vs - | | 5/8/2017 |
| | : | |
| MICHAEL FITZGERALD, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015CR000317

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Michael Fitzgerald, appeals his conviction in the Clermont County Court of Common Pleas for felony child endangering.  For the reasons detailed below, we affirm Fitzgerald's conviction.

{¶ 2} On June 4, 2015, a Clermont County grand jury indicted Fitzgerald for one count of endangering children, a violation of R.C. 2919.22(A).  The indictment stemmed from

allegations that Fitzgerald and his wife, Kaili, neglected their son, Z.F., by failing to provide him with adequate nourishment. The indictment specified that Z.F. suffered "serious physical harm." This specification elevated the charge from a misdemeanor to a third-degree felony. The grand jury indicted Kaili on an identical charge.

{¶ 3} Z.F. was born June 5, 2014. The Fitzgeralds took him to a pediatrician for regular "well infant" visits through August 2014. In August 2014, Z.F.'s pediatrician determined that Z.F. was in the 25th percentile for infant weight.

{¶ 4} For the next four months, the Fitzgeralds did not bring Z.F. to his pediatrician. Z.F.'s next appointment occurred on January 9, 2015 and the pediatrician observed that Z.F.'s weight now registered well below the third percentile for a seven-month-old child.[1] Z.F. had gained only nine ounces in the four months since his last check-up. A healthy child is expected to gain five to eight ounces *a week*.

{¶ 5} The pediatrician sent Z.F. to Cincinnati Children's Hospital, where doctors admitted him and diagnosed him with failure to thrive. Z.F. remained at the hospital for five or six days. After receiving proper nutrition at the hospital, Z.F. quickly gained weight. Children's services became involved in the case and Z.F. was released to a relative. With proper care, Z.F. returned to a normal weight.

{¶ 6} Fitzgerald told investigators that he worked, was away from the home most of the time, and was unaware that Kaili was not feeding Z.F. Kaili told investigators that she was depressed, that she would ignore Z.F. in favor of playing video games, and that she would leave Z.F. alone in his crib to cry. A text exchange between Fitzgerald and Kaili, introduced at trial, reflects them discussing and laughing about letting Z.F. "cry it out" in his

---

1. A growth chart introduced at trial depicted that Z.F.'s weight at seven months old was significantly below the lowest line on the chart, which represented the third percentile. At seven months, Z.F.'s weight was in the 50th percentile for a two month old.

crib and how long it would take before he would stop crying.

{¶ 7} The WIC assistance program provided baby food to the Fitzgeralds. WIC records indicated that the Fitzgeralds received sufficient food to provide for Z.F.'s nutritional needs. Consequently, the Fitzgeralds simply were not feeding Z.F. regularly or in sufficient quantities.

{¶ 8} The Fitzgeralds waived a jury trial and proceeded to a joint bench trial. Prior to trial, the Fitzgeralds stipulated to facts sufficient for the court to find them guilty of misdemeanor child endangering. However, the Fitzgeralds disputed that their failure to care for Z.F. caused him serious physical harm. Accordingly, the sole issue to be resolved by the trial court was whether Z.F. suffered serious physical harm.

{¶ 9} At trial, each party called their own pediatric expert to testify. Although none of the experts personally treated Z.F., they had all reviewed his relevant medical records. Dr. Kathi Makoroff testified for the state. Dr. Makoroff was board certified in general pediatrics as well as child abuse pediatrics, a sub-specialty. The court recognized her as an expert in both specialties. Dr. Makoroff worked at the Mayerson Center, a child advocacy center at Cincinnati Children's Hospital. Dr. Makoroff opined that Z.F. suffered pain from starvation and that Z.F. would have experienced acute, severe, and prolonged pain for at least some of the time between August 2014 and January 2015. Dr. Makoroff described the pain as "hunger pains," a "discomfort," and an "emptiness." Dr. Makoroff testified that infants express pain through crying.

{¶ 10} Dr. Lisa Prock, a pediatrician at Boston Children's Hospital, testified for Fitzgerald. The court recognized Dr. Prock as an expert in pediatric medicine. Dr. Prock testified that infants cry when they experience pain and that children who are being starved would feel pain. However, Dr. Prock could not offer a medical opinion as to whether Z.F. experienced any pain during the four months between pediatrics visits. Based on Z.F.'s

medical records in January 2015, Dr. Prock testified that it did not appear that Z.F. was suffering pain at the time of his admission to the hospital.

{¶ 11}  Dr. David Roer, a local pediatrician in private practice, testified for Kaili. The court recognized Dr. Roer as an expert in pediatric medicine. Dr. Roer opined that pain was not a symptom of failure to thrive and therefore Z.F. did not suffer pain. Dr. Roer explained that he associated pain with more physical causes, needle pricks, lacerations, etc. He defined "acute pain" as "something physical going on that's causing [the patient] to suffer physical pain." Dr. Roer did not consider the sensations caused by hunger, i.e., "hunger pains," the same as "actual pain." Dr. Roer conceded that Z.F.'s weight in January 2015 was "significant." However, he would not have recommended that Z.F. be hospitalized.

{¶ 12}  After considering the evidence presented, the trial court found that the state had demonstrated that Z.F. suffered serious physical harm and therefore rendered a guilty verdict against the Fitzgeralds. The court concluded that the state only proved serious physical harm under R.C. 2901.01(A)(5)(e): "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." Specifically, the court concluded that the state demonstrated "prolonged pain."

{¶ 13}  Fitzgerald assigns two errors for our review. We address them together.

{¶ 14}  Assignment of Error No. 1:

{¶ 15}  THE TRIAL COURT ERRED IN ENTERING A VERDICT OF GUILTY AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.

{¶ 16}  Assignment of Error No. 2:

{¶ 17}  THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILT BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 18}** Fitzgerald argues that there was insufficient evidence to allow the court to conclude he caused Z.F. serious physical harm because Dr. Makoroff described what Z.F. experienced as "discomfort." Fitzgerald contends that the General Assembly did not intend to include "discomfort" within the ambit of R.C. 2901.01(A)(5)(e), and that the state must prove pain with greater severity. Alternatively, Fitzgerald argues that if there was sufficient evidence of serious physical harm, the court's finding was nonetheless against the manifest weight of the evidence.

**{¶ 19}** When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 17. In determining whether a judgment is against the manifest weight of the evidence, an appellate court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶ 20}** The court convicted Fitzgerald of child endangering, a violation of R.C. 2919.22(A). Generally, the statute prohibits a person having custody or control of a child from creating a substantial risk of harm to the child by violating a duty of care. If the violation of duty leads the child to suffer serious physical harm, the crime is a felony. R.C. 2919.22(E)(2)(c).

{¶ 21} For purposes of this appeal, the relevant definition of "serious physical harm" is "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). Thus, this sub-section describes three categories of pain that constitute serious physical harm: "acute pain of such duration as to result in substantial suffering," any degree of "prolonged pain," and any degree of "intractable pain."

{¶ 22} The Revised Code does not define "pain." We therefore look to its common, ordinary meaning. *State v. White*, 29 Ohio St.3d 39, 40 (1987). Webster's Dictionary defines pain as "a state of physical or mental lack of well-being or physical or mental uneasiness that ranges from mild discomfort or dull distress to acute often unbearable agony, may be generalized or localized, and is the consequence of being injured or hurt physically or mentally or of some derangement of or lack of equilibrium in the physical or mental functions (as through disease), and that [usually] produces a reaction of wanting to avoid, escape, or destroy the causative factor and its effects." *Webster's Third New International Dictionary* 1621 (1993).

{¶ 23} We have observed that the degree of harm that rises to the level of serious physical harm is not an exact science especially when the statutory definition includes such terms as "substantial," "temporary," "acute," and "prolonged." *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470, ¶ 11, quoting *State v. Irwin*, 7th Dist. Mahoning No. 06 MA 20, 2007-Ohio-4996, ¶ 37. We noted that some courts have found serious physical harm were the victim seeks medical treatment. *Id.*

{¶ 24} We find that the sensations associated with starvation, which ordinary experience suggest fall closer to the "unbearable" rather than "mild" end of the discomfort spectrum, qualify as pain for purposes of R.C. 2901.01(A)(5)(e). We further note that the dictionary definition of pain easily encompasses the hunger pains and emptiness felt while

slowly starving. Further bolstering our conclusion, R.C. 2901.01(A)(5)(e) expressly provides that serious physical harm includes "any degree" of "prolonged pain." Thus, the General Assembly recognized that the pain necessary to constitute serious physical harm need not be acute or immediately unbearable. Instead, pain of a lesser degree can still cause significant suffering simply because of its prolonged nature.

{¶ 25} Dr. Makoroff testified that in her expert opinion, and within a reasonable degree of medical certainty, Z.F. would have experienced the sensations associated with hunger, i.e., discomfort, emptiness, and hunger pains, for days or weeks during the four months the Fitzgeralds were failing to properly feed him. We conclude that this testimony was sufficient to permit the factfinder to conclude, beyond a reasonable doubt, that Z.F. endured prolonged pain and therefore suffered serious physical harm.

{¶ 26} With respect to the manifest weight of the evidence, Fitzgerald essentially argues that the greater weight of the evidence indicated that Z.F. only experienced a mild discomfort. He points out that Dr. Prock could offer no opinion as to whether Z.F. experienced acute pain and Dr. Roer testified that Z.F. did not suffer pain because he did not consider "hunger pains" to be "actual pain."

{¶ 27} We find that the greater weight of the evidence supported the verdict. The evidence showed that the Fitzgeralds slowly starved their child over the course of four months. Z.F. gained approximately the same amount of weight in four months that a healthy, properly fed infant would gain in a week. Dr. Makoroff testified that Z.F. would have experienced pain and the sensations associated with starvation for days or weeks. All three experts also agreed with the common-sense proposition that infants cry to express pain. In this regard, the evidence showed that Z.F. would cry and the Fitzgeralds reacted by leaving him alone in his crib to "cry it out." Finally, Z.F. was hospitalized for several days following a failure to thrive diagnosis.

{¶ 28} Furthermore, we find no issue with the court's decision to credit Dr. Makoroff's testimony over the other two experts. On appeal, we generally defer to the factfinder of matters of witness credibility. *State v. Andrews*, 12th Dist. Butler No. CA2009-02-052, 2010-Ohio-108, ¶ 46. There is nothing in the record that would make us second guess the court's decision. Moreover, Dr. Roer's opinion that he did not consider "hunger pains" to be "actual pain" draws a distinction that has no statutory basis for the reasons set forth above. Accordingly, we find that the court's conclusion that Z.F. suffered serious physical harm was supported by the manifest weight of the evidence. Fitzgerald's two assignments of error are therefore overruled.

{¶ 29} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.