[Cite as *State v. Alexander*, 2020-Ohio-899.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| WILLIAM ALEXANDER, JR. | : | Case No. 2019CA00112 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2019-CR-0161


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      March 9, 2020


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

JOHN D. FERRERO      KATHLEEN O. TATARSKY
PROSECUTING ATTORNEY      101 Central Plaza South
STARK COUNTY, OHIO      Suite 1000
     Canton, OH 44702

  By: KATHLEEN O. TATARSKY
      110 Central Plaza South – Suite 510
      Canton, OH 44702

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant William Alexander, Jr. appeals the July 2, 2019 judgment of conviction and sentence of the Court of Common Pleas, Stark County, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On January 9, 2019, Nicholas Telengech, a residential housing subcontractor, accompanied an acquaintance, Pierre Taylor to Alexander's home on Rex Avenue in Canton. According to Taylor, Alexander needed plumbing work done in a second floor bathroom to remedy a leaking toilet and Taylor desired Telengech's assistance.

{¶ 3}  Upon their arrival, Alexander showed the men what needed done. The bathroom was extensively water damaged. So much so there was a hole in the floor from which the first floor was visible. Taylor took control of matters, but apparently failed to turn off the water supply as water began gushing out from the toilet during the repair, and raining down into the kitchen below.

{¶ 4}  Alexander came rushing upstairs and began assaulting both men. He repeatedly punched Telengech in the face, forced both men into a bedroom and held them there, periodically continuing to assault them. Telengech eventually fought his way out of the house and flagged down a motorist on Cherry Avenue who drove Telengech to Aultman Hospital where he was treated for his injuries.

{¶ 5}  Detectives Mcintosh and Fuelling of the Canton Police Department met with Telengech at the hospital. They observed Telengech in a trauma room, one eye swollen shut, a bloodied head, and lacerations on his face and scalp.

{¶ 6}   Telengech suffered painful injuries including a blowout fracture of his orbital bone, a fractured nasal bone, and lacerations to his scalp, lip, and forehead, all of which required stitches. He was administered pain medications and released the same day. He was unable to return to work for three weeks.

{¶ 7}   Telengech could not provide detectives Alexander's name, but was able to provide a description and direct them to Alexander's home. Telengech rode with detectives to point out the residence and identified Alexander in a photo array with 100% confidence. A warrant was issued for Alexander's arrest.

{¶ 8}   Alexander was arrested several days later and interviewed by detectives. He denied knowing Telengech, denied assaulting him, and denied Telengech had ever been in his home.

{¶ 9}   Detectives obtained a search warrant for Alexander's home to verify Telengech's description of the interior. Upon executing the warrant, detectives noted the layout and characteristics of the home matched the description given by Telengech. Additionally, detectives noticed what appeared to be blood splatter on the walls and ceiling of the bathroom. Samples of the suspect stains were collected and sent to the Bureau of Criminal Investigations. (BCI). Detectives also recovered a coat from the trash which matched the description of a coat Telengesh left behind in his flight from the home.

{¶ 10} BCI forensic scientist Stacy Violi examined the samples collected by detectives, determined the substance was indeed blood, and compared her results with a DNA standard from Telengech. She confirmed Telengech was the source of the blood splatter found in Alexander's bathroom.

{¶ 11} As a result of these events, Alexander was charged with one count of felonious assault. Alexander pled not guilty, rejected the state's offer to plead guilty in exchange for a prison sentence of four years, and elected to proceed to a jury trial.

{¶ 12} Following the state's case in chief, the trial court denied Alexander's Crim.R. 29(A) motion for acquittal. Alexander then rested without presenting any evidence. The jury was then excused for the evening.

{¶ 13} The following morning, before closing arguments, Juror No. 5 approached the court to report he recognized the name Pierre Taylor. Taylor did not testify, but his name was mentioned during the testimony of one of the detectives the day before. Juror No. 5 stated he was familiar with Taylor and his brother and wondered why Taylor had not testified if he had allegedly been present. After some questioning by the court, the state, and Alexander's counsel, Juror No. 5 assured the court that he could set aside his knowledge of Taylor and fairly and impartially decide the case based solely upon the facts and evidence presented. Alexander did not ask that Juror No. 5 be removed from the panel.

{¶ 14} Following closing arguments, the jury was instructed on both felonious assault and assault. It returned a verdict of guilty of felonious assault.

{¶ 15} Alexander was sentenced to eight years incarceration plus an additional 207 days for violating his post-release control.

{¶ 16} Alexander filed an appeal, and the matter is now before this court for consideration. He raises six assignments of error as follow:

I

{¶ 17} "THE COURT ERRED AS A MATTER OF LAW IN SUBMITTING THE FELONIOUS ASSAULT COUNT TO THE JURY AS THERE WAS INSUFFICIENT EVIDENCE OF SERIOUS PHYSICAL HARM."

II

{¶ 18} "THE COURT DEPRIVED DEFENDANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO TRIAL BY A FAIR AND IMPARTIAL JURY WHEN IT FAILED TO STRIKE JUROR 5 AFTER HE EXPRESSED KNOWLEDGE OF POTENTIAL WITNESS, HIS BACKGROUND, AND HIS FAILURE TO TESTIFY."

III

{¶ 19} "THE JURY FUNDAMENTALLY LOST ITS WAY IN ENTERING A FINDING OF GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE ON THE COUNT OF FELONIOUS ASSAULT."

IV

{¶ 20} "APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL WHEN COUNSEL REFUSED TO CALL A MATERIAL WITNESS ON DEFENDANT'S BEHALF, REFUSING TO ARGUE DEFENSES WHICH APPELLANT RAISED."

V

{¶ 21} "THE TRIAL JUDGE VIOLATED APPELLANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS AGAINST CRUEL AND UNUSUAL

PUNISHMENT IN IMPOSING AN EXCESSIVE SENTENCE OF THE STATUTORY MAXIMUM OF 8 YEARS."

I, III

{¶ 22} We address appellant's first and third assignments of error together. In his first assignment of error, appellant argues the trial court erred in denying his Crim.R 29 motion for acquittal at the close of state's evidence as there was insufficient evidence to prove Telengech sustained serious physical harm. In his third assignment of error, appellant argues Telengech's testimony that he sustained hours of beatings was not believable given his injuries. We disagree.

{¶ 23} Crim.R. 29 governs a motion for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 24} Conversely, "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different

conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus

{¶ 25} On review for sufficiency, this court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 26} Appellant was convicted of one count of felonious assault pursuant to R.C. 2903.11(A)(1). Appellant argues that while Telengech sustained injury, those injuries were not "serious" injuries as defined in R.C. 2901.01(A)(5). That section defines "serious physical harm" in relevant part as follows:

* * *

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶ 27} Upon review, we find the state presented sufficient evidence of serious physical harm. Telengech suffered a blowout fracture to his left orbital bone, a nose fracture, and lacerations to his scalp, forehead and lip which required sutures. He was prescribed pain killers and was unable to work for 3 weeks. T. I, 139-141, State's exhibit 12.

{¶ 28} "The degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.' " *State v. Irwin*, 7th Dist. Mahoning No. 06MA20, 2007-Ohio-4996. Under certain circumstances, a bruise can constitute serious physical harm because a bruise may satisfy the statutory requirement for temporary serious disfigurement. *State v. Worrell*, 10th Dist. Franklin No. 04AP-410, 2005-Ohio-521, at ¶ 47-51, reversed on other grounds by *In re Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 847 N.E.2d 1174, 2006-Ohio-2109; see also, *State v. Payne*, 8th Dist. Cuyahoga 76539 (July 20,

2000) (bloody cut, swollen eye are temporary, serious disfigurement); *State v. Plemmons–Greene*, 8th Dist. Cuyahoga No. 92267, 2010-Ohio-655, (black eye, bruising, swelling to right side of face, scratches on neck, and bruising on thighs and buttocks).

{¶ 29} Here, Telengech suffered broken bones and lacerations that required sutures. T. I 139-141, State's Exhibit 12. He was in pain for three weeks and unable to work during that time. T. 141. Telengech's injuries without question constitute serious physical harm. We find, therefore the trial court did not err in denying Alexander's Crim.R. 29 motion for acquittal, and the jury did not lose its way in finding Alexander guilty of felonious assault.

{¶ 30} The first and third assignments of error are overruled.

II

{¶ 31} In his second assignment of error, Alexander argues plain error occurred when Juror No. 5 was not removed from the panel. We disagree.

{¶ 32} Because Alexander neither requested Juror No. 5's removal from the jury, nor objected to the juror's continued service on the jury, we review the matter for plain error. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus.  Notice of plain error "is to be taken with the utmost caution, under

exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 33} Upon review, we cannot say that the trial court committed plain error when it failed to sua sponte dismiss Juror No. 5. When addressed by the court and counsel, Juror No. 5 indicted he knew a person mentioned by a witness the day before – Pierre Taylor -- and shared his knowledge that Taylor is "troubled." T. 236. Juror No. 5's concern was "If [Taylor] was there, why wouldn't he be in here testifying?" T. 236. Despite his knowledge of Taylor and his belief that Taylor should have testified, however, Juror No. 5 agreed he could decide the matter based on the facts in evidence. T. 238-239.

{¶ 34} We find no error plain or otherwise in the trial court's failure to sua sponte remove Juror No. 5 from the jury. Further, we find Alexander has failed to establish that the outcome of his trial would have been any different but for the trial court's failure to sua sponte dismiss Juror No. 5.

{¶ 35} The second assignment of error is overruled.

IV

{¶ 36} In his next assignment of error, Alexander argues he received ineffective assistance of counsel because his counsel failed to call Pierre Taylor to testify in his defense, and that due to this failure, he was unable to raise a self-defense or defense of home argument. We disagree.

{¶ 37} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable

representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 38} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18. Decisions about which witnesses to call involve matters committed to counsel's professional judgment. *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 127 "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001).

{¶ 39} Assuming arguendo that failure to call Taylor could somehow be construed as ineffective, we find Alexander cannot establish he was prejudiced by counsel's failure to do so. Taylor was also allegedly assaulted by Alexander and was a witness to Alexander assaulting Telengech. Alexander does not explain how

this circumstance prevented him from advancing a self-defense or defense of home claim or would have aided in either claim. Additionally, anything Taylor could have added through his testimony is speculative as Alexander never proffered what he expected Taylor to say if he had been called to testify. Although Alexander includes documents in the appendix to his brief which were submitted to the trial court with his motion for post-conviction relief, those documents are outside the trial record and we may not therefore consider the same.

{¶ 40} Accordingly, the fourth assignment of error is overruled.

V

{¶ 41} In his final assignment of error, appellant argues the trial court erred in sentencing him to the maximum penalty for a second degree felony. Appellant argues he was punished for demanding a trial and that the trial court did not appropriately weigh the seriousness and recidivism factors. We disagree.

{¶ 42} First, as to Alexander's allegation that he was punished for demanding a trial, a trial court must avoid the appearance of penalizing a defendant for going to trial. In *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637 (8th Dist.2005), the court observed, "[If] the court makes statements that 'give rise to the inference that [the] defendant may have been punished more severely because of his assertion of the right to trial by jury,' we must vacate the sentence * * * unless the record also contains an unequivocal statement that the defendant's decision to go to trial was not considered in imposing the sentence." *Id.* at ¶ 13, 825 N.E.2d 637, quoting *State v. Hobbs*, 8th Dist. Cuyahoga No. 81533, 2003-Ohio-4338, ¶ 71. " 'Absent such an unequivocal

statement, the sentence will be reversed and the matter remanded for resentencing.' " *Morris*, 2005-Ohio-962 at ¶ 13, 159 Ohio App.3d 775, 825 N.E.2d 637, quoting *State v. Scalf*, 126 Ohio App.3d 614, 621, 710 N.E.2d 1206 (8th Dist.1998).

{¶ 43} Next, the trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences. See *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37. A trial court's imposition of a maximum prison term is not contrary to law as long as the court sentences the offender within the statutory range for the offense, and in so doing, considers the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12. *State v. Santos*, 8th Dist. Cuyahoga No. 103964, 2016-Ohio-5845, ¶ 12. Although a trial court must consider the factors in R.C. 2929.11 and 2929.12, there is no requirement that the court state its reasons for imposing a maximum sentence, or for imposing a particular sentence within the statutory range. *Id*.

{¶ 44} Alexander points to no evidence in the record to support a finding that his sentence was imposed as retaliation for choosing to try his case, nor upon review of the record do we find any such indication. Additionally, his 8-year sentence is within the statutory range and is therefore not contrary to law, and does not constitute an abuse of discretion.

{¶ 45} The final assignment of error is overruled.


CONCLUSION

{¶ 46} Alexander's six assignments of error are overruled and the judgment

of the Stark County Court of Common Pleas is affirmed.




By Wise, Earle, J.

Hoffman, P.J. and

Gwin, J. concur.


EEW/rw