[Cite as *State v. McLaughlin*, 2020-Ohio-969.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO , | : | CASE NO. CA2019-02-002 |
| Appellee, | : | O P I N I O N<br>3/16/2020 |
| | : | |
| - vs - | : | |
| | : | |
| JAMIE L. McLAUGHLIN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 18-500-146

Richard W. Moyer, Clinton County Prosecuting Attorney, Katie Wilkin, 103 East Main Street, Wilmington, Ohio 45177, for appellee

Bieser, Greer & Landis LLP, Matthew M. Suellentrop, 6 North Main Street, Suite 400, Dayton, Ohio 45402, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Jamie L. McLaughlin, appeals his conviction in the Clinton County Court of Common Pleas for felonious assault and having weapons while under disability.

{¶ 2} As of May 2018, appellant and Mary Neace were in a romantic relationship

that included BDSM role play.[1]  On May 2, 2018, while engaged in BDSM role play, appellant shot Neace in the torso, causing life threatening injuries.  Appellant called the police.  Blanchester Police Officer Kristen Jeffers and Sergeant Josh Smith of the Clinton County Sheriff's Office responded to the scene.  Appellant admitted shooting Neace, stated the shooting was accidental, and told the officers that the firearm was upstairs in the bedroom where the shooting occurred.  Officer Jeffers went upstairs and found the firearm, a Glock 9 mm handgun, partially hidden under a black pouch in the hallway next to the bedroom where the shooting occurred.  The handgun had one round in the chamber and "at least one round" in the magazine.

{¶ 3}  Appellant behaved strangely while interacting with the officers.  Although he is not British, appellant spoke with a British accent at times.  On three separate occasions, appellant stated he wanted Neace's underwear to be tested to determine whether she was cheating on him.  His first request was made within 30 minutes of Officer Jeffers' arrival on the scene.  Appellant jokingly talked about firearm safety.

{¶ 4}  Neace was rushed to the hospital where medical personnel saved her life.  Due to the severity of Neace's injuries, Officer Jeffers did not speak with Neace on May 2, 2018.  The officer was able to talk to her on May 4, 2018, and May 7, 2018.  Both times, Neace indicated the shooting was accidental.  Photographs taken at the hospital show bruises on Neace's legs, arms, wrists, hands, neck and face, and a black eye.  Appellant was arrested on May 7, 2018, for having weapons while under disability after a search of his criminal history revealed he had prior drug felony convictions.

{¶ 5}  In June 2018, the Clinton County Grand Jury returned a ten-count indictment

---

1. BDSM is defined as a "sexual activity involving such practices as the use of physical restraints, the granting and relinquishing of control, and the infliction of pain." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/BDSM (accessed Feb. 26, 2020).  BDSM is an umbrella term covering bondage and discipline, dominance and submission, and sadism and masochism.  *Id.*

against appellant, charging him, inter alia, with felonious assault (Count II) and having weapons while under disability (Count V). Counts II and V were severed from the other counts and tried to a jury in October 2018.[2] Officer Jeffers, Sergeant Smith, and Neace testified on behalf of the state. Appellant, a paramedic who treated Neace at the scene, and Blanchester Police Chief Scott Reinbolt testified on behalf of appellant.

{¶ 6} Officer Jeffers testified that she found bloody ropes, handcuffs, sex toys, and random rounds of ammunition on the floor of the bedroom where the shooting occurred. While she did not personally collect the ammunition, "it appeared to be the same ammo that was" in the Glock handgun. The officer testified that appellant consistently stated the shooting was accidental, and that he was tracing Neace's breasts with the handgun while they were engaged in BDSM when "his finger must have accidentally slipped into the trigger guard," thereby firing the handgun. When told the handgun was found partially hidden in the hallway, and not in the bedroom, appellant replied he may have tossed it. As to whether appellant had checked the handgun before he started using it as a prop, appellant told Officer Jeffers that

> There was a loaded magazine in it. * * * He told me that he forgot that he was racking the gun because he thought it would be hot to bounce rounds off of Mary's chest and that now that he was thinking about it, that must have been how a round got chambered, although he thought that he had cycled through all of the rounds in the magazine. He also made a comment that he realized that the slide would have locked back if he had cycled through all the rounds in the magazine.

{¶ 7} Officer Jeffers further testified she observed several little cameras in the living room and on the second floor. Appellant told the officer he installed the cameras because he could not trust Neace when he was at work and that he became so worried about what

---

2. Following appellant's indictment, the state ultimately dismissed Counts I, III, IV, and X. Counts V VII, VIII, and IX were jointly tried in a bench trial in February 2019. Appellant was found not guilty on all four counts.

Neace was doing when he was at work that he ultimately lost his job. Officer Jeffers testified that appellant was not arrested on the day of the shooting because there was no indication a crime had occurred.

{¶ 8} Neace testified that unlike prior times in their relationship, she and appellant were not engaged in BDSM role play on May 2, 2018. Rather, appellant was punishing her for making an upsetting comment and for a telephone call with another man appellant had forced her to make earlier that day. Neace testified the ordeal lasted hours and included her being tied-up, suspended by all fours, gagged, punched, kicked, urinated on, burnt, and ultimately shot. Neace testified she was in the process of untying a knot when appellant caught her, stated "you're not going to do that again," punched her, and shot her. Neace denied requesting or consenting to the punishment she endured on May 2, 2018.

{¶ 9} Neace admitted she initially told Officer Jeffers that the shooting was accidental, but then testified she later recanted that statement. Neace explained that until appellant was incarcerated, she was afraid to speak and tell the truth about what happened and was terrified of what appellant would do to her. Neace testified appellant's house was under surveillance "24/7" with security cameras and two-way cameras in the rooms. Neace testified appellant had the cameras installed for security purposes and to ensure she "was being good." Both Neace and appellant testified the cameras were not recording on May 2, 2018. Neace further testified she was a methamphetamine user and had relapsed two weeks before trial.

{¶ 10} Appellant denied he was punishing Neace on May 2, 2018, and instead testified they were engaged in one of their favorite BDSM role plays. Appellant further denied he performed some of the acts described by Neace and testified that other acts were either suggested or requested by Neace, including urinating on her and racking rounds. Appellant testified the shooting was accidental and denied knowing there was a live round

in the handgun. He further testified this was not the first time he was using the handgun as an erotic prop. However,

> In the past, the chamber was always empty. So, the magazine was full, but it wasn't cocked[.] So, there was no possibility of it firing during our role play. [S]o I wasn't used to live round being in the chamber ever being an issue. And distracted as I was by her and what we were doing, I just lost track of the fact that there was one in the chamber.

Appellant then opined his finger "must have slipped * * * inside of the trigger guard and depressed the trigger" as he was tracing Neace's breasts with the handgun. Appellant did not remember "doing anything consciously with the gun" following the shooting. Appellant admitted he was not legally permitted to possess a firearm. He further admitted he was previously convicted of drug-related offenses.

{¶ 11} Regarding his request to test Neace's underwear, appellant explained he made the request while trying to have a conversation with police, "it just seemed like an appropriate thing to ask," and "I was pretty much just making a joke." Appellant explained the surveillance equipment was installed for dual purposes, to protect himself against Neace's drug dealers and as a "pretty cool way" to keep in touch with Neace when he was at work.

{¶ 12} The paramedic who treated Neace at the scene testified that appellant was very frantic. She further testified that she asked Neace only one question, namely, whether "it was consensual." Neace replied it was. Chief Reinbolt issued several press releases between May 2, 2018, and May 16, 2018; the second press release was issued on May 4, 2018. Chief Reinbolt admitted that at the time of the second press release, he still believed the shooting was accidental based upon police investigation and Neace's statements. He noted, however, that Neace's medical condition as of May 4, 2018, had prevented a comprehensive interview of Neace. Chief Reinbolt further testified that Neace's relatives

- 5 -

pressed the police to arrest and charge appellant from the time the police arrived at the scene.

{¶ 13} At the close of its case-in-chief, the state moved to admit its exhibits into evidence, including Exhibits 58 and 59, the 2007 guilty plea of a Jamie L. McLaughlin in Greene County and the 2008 felony drug convictions of a Jamie L. McLaughlin in Clinton County, respectively.  Trial counsel objected to both exhibits.  The trial court admitted Exhibit 59 into evidence but not Exhibit 58.  Appellant then moved for an acquittal pursuant to Crim.R. 29.  The trial court denied the motion.  Appellant renewed his Crim.R. 29 motion for acquittal at the conclusion of the trial.  The trial court denied the motion.  On October 31, 2018, the jury found appellant guilty of felonious assault and having weapons while under disability.  The trial court subsequently sentenced appellant to an aggregate ten-year prison term.

{¶ 14} Appellant now appeals, raising four assignments of error.  For readability purposes, we will consider the first two assignments of error together.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 19} Appellant argues that his felonious assault conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because (1) the state failed to prove that the Glock handgun recovered at the scene was the weapon he used to shoot Neace, and (2) the testimony of Neace, law enforcement officers, and appellant plainly shows the shooting was accidental, and thus, the state failed to prove appellant

knowingly shot Neace. Appellant further argues that his conviction for weapons under disability is not supported by sufficient evidence because the state failed to prove that the Jamie L. McLaughlin referred in Exhibit 59 is appellant.

{¶ 20} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 20. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 21} To determine whether a conviction is against the manifest weight of the evidence, a reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18.

{¶ 22} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which prohibits any person from knowingly causing physical harm to another by means of a deadly weapon. A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person

- 7 -

is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 23} Appellant argues his felonious assault conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to prove the Glock handgun recovered at the scene was the weapon he used to shoot Neace. In support of his argument, appellant asserts that the recovered magazine was loaded to capacity and that no spent shell casing was recovered to account for the round that shot Neace.

{¶ 24} We note that appellant's defense strategy at trial was to deny he intentionally shot Neace. This is vastly different than the defense strategy appellant now advances on appeal; namely, that the Glock handgun recovered at the scene was not the weapon used to shoot Neace. It is well established that a party cannot raise new issues or legal theories for the first time on appeal. *State v. Erdmann,* 12th Dist. Clermont Nos. CA2018-06-043 and CA2018-06-044, 2019-Ohio-261, ¶ 27. Furthermore, upon reviewing the record, we find that it does not support appellant's claim. Upon the officers' arrival at the scene, appellant admitted he was the shooter and told the officers that the firearm he used was upstairs. Officer Jeffers subsequently recovered the Glock handgun nearby the crime scene. There was no evidence that another firearm was recovered at the scene or used to shoot Neace. Throughout his trial testimony, appellant further identified the Glock handgun as the firearm he used to shoot Neace.

{¶ 25} Appellant next argues that his felonious assault is against the manifest weight of the evidence because the state failed to prove he knowingly shot Neace. In support of his argument, appellant relies upon the paramedic's testimony that appellant was frantic at the scene and was asking her to help Neace; Neace's acknowledgment to the police that she and appellant had previously engaged in BDSM role play that included the use of a firearm, and that the shooting was accidental; Officer Jeffers' testimony there was no

indication a crime had occurred on May 2, 2018; Chief Reinbolt's testimony that the evidence gathered at the scene supported the conclusion that the shooting was accidental; Reinbolt's testimony that Neace's relatives were pressuring the police to arrest and charge appellant; and appellant's testimony unequivocally denying he knowingly shot Neace. Appellant further stresses Neace's testimony that she was a methamphetamine user who admitted lying to Officer Jeffers.

{¶ 26} Upon thoroughly reviewing the record, we find that the jury did not lose its way and create a manifest miscarriage of justice in finding appellant guilty of felonious assault. Trial testimony plainly revealed that appellant knew how to use the Glock handgun, loaded it and racked it, and that he was the one who pulled the trigger. While Neace initially told Officer Jeffers that the shooting was accidental, she testified she later recanted her statement once appellant was incarcerated and could no longer harm her. Likewise, while law enforcement officers initially believed the shooting was accidental, their testimony plainly reveals that following further investigation, they subsequently determined that the shooting was in fact not accidental.

{¶ 27} The jury was presented with two different versions as to whether what occurred on May 2, 2018, was consensual or a punishment, and whether the shooting was accidental. As the trier of fact, the jury was in the best position to see and hear the witnesses, and observe their demeanor, equivocation, and candor when it determined the weight to be given their testimony. *State v. Gross*, 12th Dist. Preble No. CA2018-01-001, 2018-Ohio-4557, ¶ 43. By its verdict, the jury plainly chose to credit Neace's testimony and conclude that appellant's version was not credible. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible, and we will not disturb the jury's verdict on appeal.

{¶ 28} In light of the foregoing, appellant's felonious assault conviction is supported

by sufficient evidence and is not against the manifest weight of the evidence.

{¶ 29} Appellant was further convicted of having weapons while under disability in violation of R.C. 2923.13(A)(3), which prohibits any person from knowingly having or using a firearm if the person has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. Where the existence of a prior offense is an element of a subsequent crime, the state must prove the prior conviction beyond a reasonable doubt. *State v. Craft*, 181 Ohio App.3d 150, 2009-Ohio-675, ¶ 35 (12th Dist.).

{¶ 30} At trial, in connection with the weapons-under-disability charge, the state presented the testimony of Officer Jeffers and Exhibit 59, the 2008 felony drug convictions of a Jamie L. McLaughlin in Clinton County. Exhibit 59 consisted of a face sheet containing personal identifying information relating to appellant, including his date of birth and social security number, a certified copy of the July 9, 2008 sentencing judgment entry of a Jamie L. McLaughlin for aggravated possession of drugs and trafficking in marijuana, both fifth-degree felonies, and certified copies of the July 2008 guilty plea and December 2007 indictment of a Jamie L. McLaughlin for felony drug offenses. The face sheet bore no certification. The last page of the sentencing judgment entry, guilty plea, and indictment bears a raised official seal and contains the following certification from the Clinton County Court of Common Pleas clerk of court: "I hereby certify that the above and foregoing is truly taken and copied from the original now on file in my office." Officer Jeffers identified the defendant in the 2008 felony drug conviction as being appellant. The trial court admitted Exhibit 59, finding that the face sheet containing appellant's identifying information coupled with Officer Jeffers' testimony was sufficient to authenticate the documents as appellant's prior convictions for purposes of the weapons-under-disability charge.

{¶ 31} Appellant argues that his weapons-under-disability conviction is not

supported by sufficient evidence because the individual documents in Exhibit 59 are not properly authenticated and fail to identify him as the person named in the documents.

{¶ 32} Evid.R. 901 provides that authentication of a piece of evidence is a condition precedent to the admissibility of that evidence. "Evid.R. 902 lists certain items that are self-authenticating so to negate the need for any extrinsic evidence in support of the item's admissibility." *State v. McCallum*, 9th Dist. Medina No. 08CA0037-M, 2009-Ohio-1424, ¶ 20. As applicable here, Evid.R. 902(4) provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to certified copies of public records:

> A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any law of a jurisdiction, state or federal, or rule prescribed by the Supreme Court of Ohio.

{¶ 33} The sentencing judgment entry, guilty plea, and indictment in Exhibit 59 are public records and properly certified. They are therefore self-authenticating documents under Evid.R. 902(4) and were properly admitted as such. *See State v. Smith*, 12th Dist. Butler No. CA2009-02-038, 2010-Ohio-1721. Thus, contrary to appellant's assertion, it was not necessary that a witness otherwise appear and provide testimony authenticating the public records in Exhibit 59. *State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013-Ohio-5682, ¶ 35.

{¶ 34} R.C. 2945.75(B) governs proof of a prior conviction and provides that "[w]henever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such

- 11 -

prior conviction."   Thus, to prove appellant's prior felony drug conviction under R.C. 2945.75(B), the state presented Exhibit 59 and was required to present evidence that appellant was the Jamie L. McLaughlin named in the exhibit's certified public records. Identical names alone are insufficient to establish the requisite connection between a defendant and a prior conviction.  *State v. Lumpkin*, 10th Dist. Franklin No. 05AP-656, 2006-Ohio-1657, ¶ 16.

{¶ 35} At trial, Officer Jeffers identified appellant as Jamie L. McLaughlin, the man present at the scene on May 2, 2018, who admitted shooting Neace and whom the officer investigated regarding the May 2, 2018 shooting.   Officer Jeffers was asked on direct examination whether she had conducted a criminal history check on appellant.  The officer replied she had.  Upon being asked if she had found anything, Officer Jeffers testified she discovered that appellant had prior felony drug convictions in Greene and Clinton Counties, thereby placing appellant under disability.   Officer Jeffers testified she obtained certified copies of the prior felony drug convictions and subsequently identified Exhibit 58 and Exhibit 59 as the certified copies of documents from Greene and Clinton Counties respectively.  As pertinent here, Officer Jeffers subsequently testified that Exhibit 59 included a certified copy of appellant's 2008 felony convictions for aggravated possession of drugs and trafficking in marijuana in Clinton County.

{¶ 36} Officer Jeffers used a unique identifier such as appellant's social security number and date of birth when she conducted a criminal history check on appellant, thereby obtaining the foregoing documents.  Officer Jeffers' testimony identifies appellant as the person to whom the sentencing judgment entry, guilty plea, and indictment in Exhibit 59 related.[3]

---

3. As stated above, the documents constituting Exhibit 59 were certified individually by the clerk of courts with the exception of the face sheet.  Because the face sheet did not bear a certification in accordance with

{¶ 37} In light of the foregoing, and upon reviewing Officer Jeffers' testimony in a light most favorable to the state, we find that it provided sufficient evidence that the Jamie L. McLaughlin named in the certified copies of the public records in Exhibit 59 is appellant. Thus, the state presented sufficient evidence to support appellant's conviction for having weapons while under disability.

{¶ 38} Having found that appellant was properly convicted of felonious assault and having weapons while under disability, appellant's first and second assignments are overruled.

{¶ 39} Assignment of Error No. 3:

{¶ 40} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR.

{¶ 41} Appellant argues the trial court erred in admitting Exhibit 59 into evidence because appellant's prior felony drug convictions in Clinton County were not properly authenticated under Evid.R. 901.

{¶ 42} A trial court's decision to admit or exclude evidence will not be reversed by a reviewing court absent an abuse of discretion. *Smith*, 2010-Ohio-1721 at ¶ 96. Incorporating our analysis under the first assignment of error here, we find no reversible error in the trial court's admission of Exhibit 59 into evidence. *Id.*

{¶ 43} Appellant further argues that the trial court erred in "failing to conduct an in-camera review or make any evidentiary ruling on potential discovery materials."

{¶ 44} This argument relates to specific Clinton County Children Services records ("children services records") subpoenaed by appellant and showing there was an open case concerning Neace prior to May 2, 2018. Clinton County Children Services moved to quash

Evid.R. 902(4), it was not properly authenticated and should have been excluded. However, its admission is harmless error in view of Officer Jeffers' testimony identifying appellant as the person named in the properly certified public records.

- 13 -

the subpoena.  On October 10, 2018, the trial court conducted a hearing on the motion and was provided the records.  Upon hearing the parties' arguments, the trial court held it would conduct an in camera review of the documents prior to trial but deferred a ruling as to the documents' admissibility or relevancy until the trial itself.  At trial, Neace testified about her drug use, both prior to and since the May 2, 2018 shooting, and her dealings with Clinton County Children Services.  Trial counsel did not seek a ruling from the trial court on the issue and the trial court did not revisit the issue.

{¶ 45} On appeal, appellant asserts that given trial testimony that Neace, the state's main witness, "had an ongoing issue with the use" of methamphetamine, "there would have been no evidence that th[e] incident was anything more than an accidental shooting," had she not testified.  Thus, appellant asserts that reviewing the children services records was "absolutely imperative" to determine whether they contained "exculpatory *Brady* materials or impeachment materials * * * [as] the records could completely exonerate" appellant.

{¶ 46} The children services records are included in the record under seal.  They reveal that Neace has a history of illegal substance abuse, including methamphetamine, tested positive for methamphetamine in the months prior to the shooting, and reportedly used heroin in January 2018.  The records further reveal that Neace admitted using methamphetamine consistently for over a year, and that her children resided with her during that time and seemingly knew she used drugs.

{¶ 47} This evidence is of little probative value other than to show Neace is a drug user and a bad mother.  The essential fact that appellant shot Neace was not in dispute.  That Neace was a bad mother and a drug user is not exculpatory and does not tend to make it more or less likely that the shooting was accidental.

{¶ 48} Regarding appellant's wish to use the children services records for impeachment purposes, Evid.R. 608(B) provides that

- 14 -

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶ 49} Evid.R. 608(B) "precludes the admission of extrinsic evidence of specific conduct of a witness that is submitted for the purpose of challenging the witness' character for truthfulness." *State v. Statzer*, 12th Dist. Butler No. CA2015-08-148, 2016-Ohio-7434, ¶ 7. Neace's children services case, including her drug use as part of that case, is necessarily extrinsic evidence of specific instances of her conduct, plainly falls within the parameters of Evid.R. 608(B), and is thus inadmissible.

{¶ 50} Appellant's third assignment of error is overruled.

{¶ 51} Assignment of Error No. 4:

{¶ 52} THE APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶ 53} Appellant argues that his trial counsel was ineffective because he (1) failed to stipulate to appellant's prior convictions for aggravated possession of drugs and trafficking in marijuana as an element of the weapons-under-disability charge, (2) failed to request a limiting jury instruction regarding appellant's prior convictions, and (3) failed to seek a ruling from the trial court regarding the children services records after Neace testified. In support of the first two issues, appellant cites *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440. In that case, the Ohio Supreme Court followed the United States Supreme Court's decision

in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644 (1997), and held that "a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the facts of [a] prior conviction * * * and instead admits into evidence the full record of the prior judgment" when that prior conviction constituted an element of a weapons-under-disability charge. *Creech* at ¶ 40.

{¶ 54} To establish ineffective assistance of counsel, appellant must show (1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984); *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. A "reasonable probability" is a probability that is "sufficient to undermine confidence in the outcome." *Strickland* at 694. An appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective. *Id.* at 689. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 39.

{¶ 55} Trial counsel was not ineffective for failing to stipulate to appellant's prior convictions. A trial counsel's failure or refusal to stipulate to a prior conviction is a matter of trial strategy, thereby requiring the state to prove all elements of an offense. *See State v. Huddleston*, 3d Dist. Logan No. 8-17-21, 2018-Ohio-1114. It is well settled that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995); *State v. Lawrence*, 12th Dist. Butler No. CA2018-11-208, 2019-Ohio-2788, ¶ 19. Trial counsel's decision not to stipulate to appellant's prior convictions was strategic in nature and partially successful as appellant's prior Greene County felony convictions were

not admitted into evidence.

{¶ 56} Furthermore, "even assuming that counsel should have * * * offered to stipulate to the convictions," appellant "has not established a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 153, quoting *Strickland*, 466 U.S. at 694; *State v. Jones*, 1st Dist. Hamilton No. C-160826, 2018-Ohio-1130. A stipulation would only have relieved the state of its burden of proving the prior conviction element of the weapons-under-disability charge. But because the prior conviction remains an element of the weapons-under-disability charge, the jury still would have learned that appellant had prior felony drug convictions even if trial counsel had stipulated to these prior convictions. *Spaulding* at ¶ 153.

{¶ 57} Trial counsel was not ineffective for failing to request a limiting jury instruction regarding appellant's prior convictions. A trial counsel's failure to request a limiting instruction regarding a prior conviction does not automatically constitute ineffective assistance of counsel. *State v. Cunningham*, 12th Dist. Butler No. CA2017-03-034, 2018-Ohio-912; *State v. May*, 2d Dist. Montgomery No. 25359, 2014-Ohio-1542. Furthermore, a trial counsel may choose not to seek a limiting instruction as a matter of trial strategy in order not to highlight a defendant's prior conviction or out of concern that if such instruction was given, the prior convictions would be once again called to the jury's attention. *May* at ¶ 18; *State v. Smith*, 5th Dist. Perry No. 98-CA-6, 1999 Ohio App. LEXIS 3947, *20 (Aug. 20, 1999).

{¶ 58} Even assuming that trial counsel should have requested a limiting instruction, appellant has not established that he was prejudiced as a result. Given the evidence presented at trial and discussed above and the fact that appellant's prior convictions were drug offenses, and not offenses involving violence or firearms, we find that the state's

evidence of appellant's guilt is compelling and that appellant cannot establish a reasonable probability that but for counsel's errors, the outcome of his trial would have been different.

{¶ 59} Finally, given our ruling above that the children services records were not admissible under Evid.R. 608(B), were not exculpatory, and were only marginally relevant and probative, trial counsel was not ineffective for failing to seek a ruling from the trial court regarding the records after Neace testified. Appellant asserts that the children services records "would have probably, if not certainly, cast a greater shadow on the testimony of Ms. Neace given that such cases involve the removal of children from a parent incapable of providing adequate care." However, Neace testified on direct and cross-examination about her drug abuse, her relapse two weeks before trial, and the fact children services took custody of her children in January 2018.

{¶ 60} Appellant's fourth assignment is overruled.

{¶ 61} Judgment affirmed.


S. POWELL, P.J., and PIPER, J., concur.