[Cite as *State v. King*, 2023-Ohio-875.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2022-01-002<br>CA2022-01-003 |
| | : | |
| - vs - | : | O P I N I O N<br>3/20/2023 |
| | : | |
| MICHAEL A. KING, JR., | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case Nos. CRI 20-500-022 and CRI 21-500-124

Andrew T. McCoy, Clinton County Prosecuting Attorney, and Melvin Planas, Assistant Prosecuting Attorney, for appellee.

Dennis C. Belli, for appellant.

**BYRNE, J.**

{¶1}  Michael A. King, Jr. appeals from his convictions for burglary and failure to appear.  For the reasons discussed below, we affirm King's burglary conviction but reverse his conviction for failure to appear.

**I. Factual and Procedural Background**

{¶2}  In January 2020, a Clinton County grand jury indicted King on one count of

burglary in violation of R.C. 2911.12(A)(2) and (D). The indictment arose from allegations that on October 31, 2019, King entered the open, attached garage of a home located 4826 St. Rt. 380 in Wilmington, Ohio. From the garage, King entered the home's attic and traversed further into the home. King then dropped down into the home's interior through a hole in the ceiling and was shot by the homeowner. King fled and was subsequently arrested.

{¶3} In February 2020, King appeared before the Clinton County Court of Common Pleas for arraignment. He entered a not guilty plea and was subsequently released on a surety and signature bond.

{¶4} King's trial was repeatedly delayed. The court issued entries indicating that the delays were attributable to King failing to cooperate with his attorneys. Concerns over these delays resulted in the court eventually modifying King's bond and requiring him to post a supplemental cash/surety bond.

{¶5} In February 2021, authorities arrested King on a separate theft charge and placed him in the Clinton County Jail. The court thereafter revoked King's bond and set a new bond of $100,000 cash or surety and an additional $2,500 signature recognizance bond. In early March 2021, King made bail by posting these bonds.

{¶6} On May 25, 2021, the court issued an entry that indicated that the case was scheduled for a two-day jury trial to commence on June 2, 2021.

{¶7} On June 2, 2021, the court issued an entry noting that King had failed to appear and was in violation of the court's order and his posted bond. The court ordered the clerk to issue a capias for King's arrest and further ordered that King's signature and surety bonds were forfeited.

{¶8} Subsequently, a Clinton County grand jury indicted King for recklessly failing

- 2 -

to appear on June 2, 2021, as required by his recognizance, in violation of R.C. 2937.29 and 2937.99 (A) and (B).

### A. The Trial for Failure to Appear

**{¶9}** In October 2021, the state tried King's failure to appear charge to a jury.[1] The state called two witnesses: Lieutenant Douglas Eastes of the Clinton County Sheriff's Office and Debra Lynch, a deputy clerk of the Clinton County Clerk of Court's office.

**{¶10}** Lieutenant Eastes identified King as the individual charged in the burglary case. Deputy Clerk Lynch identified the May 25, 2021 entry of the court which noted that King's jury trial on the burglary charge was scheduled for June 2, 2021. Deputy Clerk Lynch also identified the court's June 2, 2021 entry which indicated that "Defendant Michael King, Jr. failed to appear in violation of court order and terms of his posted bond." The jury found King guilty of the failure to appear charge.

### B. The Burglary Trial

**{¶11}** In December 2021, the state tried King's burglary charge to a jury. We summarize the trial testimony below.

#### 1. Testimony of Keith Freeland

**{¶12}** Keith Freeland testified he lived at 4826 St. Rt. 380, Wilmington, Ohio ("the home") on October 31, 2019. At 11:00 a.m. on October 31, he was inside the home when he heard a noise in his attic that was "moving across the ceiling." He had heard racoons in the attic previously, but this noise sounded "a little heavier" than an animal. The sound travelled to an adjoining room. Freeland stated he saw "somebody drop down" into that

---

1. Initially both the burglary and failure to appear charge were to be tried together. However, one of the state's witnesses for the burglary charge was unavailable to testify for medical reasons and so the trial court bifurcated the burglary charge and tried it several months later.

adjoining room. He pulled a gun that he kept by his bed and shot at the person immediately. Freeland identified King as the person he shot.[2]

**{¶13}** After shooting King, Freeland began to speak to him and accused him of being at the home on a prior occasion and stealing items from the home. King responded that he had never been to the home before. Freeland asked King his name and was given a "fictitious name." Freeland testified that King told him that he was there because he had heard that there was marijuana being stored or grown on the property. Freeland denied that he had marijuana on the property and denied using it.

**{¶14}** The state played two 9-1-1 calls in which Freeland reported the intrusion. In the first of those calls, Freeland reported that he "just shot a guy." In the second call, Freeland reported that the intruder had just escaped and that he "probably went out the bathroom window." Freeland stated that at the time of the second 9-1-1 call, King made a "mad dash" for an adjoining bathroom, knocked out a glass window, and fled the home.

**{¶15}** As to how King would have entered the home, Freeland testified that all the doors to the home were locked. However, the attached garage had a door that was rotted away. Freeland reported that there were "steps" in the garage that would provide access to the home's attic.

### 2. Testimony of Detective Sergeant Robert Gates

**{¶16}** Detective Sergeant Robert Gates testified that he worked for the Clinton County Sheriff's Office and investigated a home invasion at 4826 St. Rt. 380. He reported that the area around the home was heavily wooded and is at the end of a long lane that curves off the road. Detective Sergeant Gates located a blue flashlight in the area where

---

2. King's identity was established through other evidentiary means, including a DNA match from blood found at the scene. King did not challenge proof of his identity at trial. We have omitted reference to evidence related to establishing King's identity, except where necessary for context.

Freeland stated he shot King.  Freeland denied owning the blue flashlight.

{¶17}  Detective Sergeant Gates examined and photographed the scene, including the route he believed King took in entering the home.  The state introduced these photographs and others depicting the home.  The photographs reveal an exterior door of the home displayed a "Private Property No Trespassing" sign.  Inside, the home was extremely cluttered, consistent with "hoarding"-type behavior.

{¶18}  Detective Sergeant Gates testified that there was a "walkway door"-sized opening to the attached garage where the garage door had rotted away.  Upon entering this opening, one would have to climb over a pile of various items to get access to a workbench in the garage.  Detective Sergeant Gates found and photographed what appeared to be a recent shoe print on that workbench.

{¶19}  After climbing up on top of the workbench, one could then climb onto an attached ladder that led to the attic.  Once in the attic, there was a series of wood planks that traversed a rafter system, providing a means of crawling across the attic on hands and knees.  These planks ran in a straight line between the room in which Freeland was positioned when he first heard King in the attic above and the adjoining room where King "dropped down" and was shot.  There was no ceiling in the area where King dropped down.

### 3. Defense Case

{¶20}  King called Detective Sergeant Gates to testify in his defense case. Detective Sergeant Gates identified numerous other photographs he took at the residence, which were subsequently admitted into evidence.[3]  King submitted no other evidence in his defense case.

---

3. The apparent purpose for introducing all the additional photographs was to suggest that the level of debris and garbage inside may have led King to believe that the home was not currently being resided in.  The issue of proof of habitation has not been raised on appeal.

#### 4. Closing Arguments

{¶21} During closing, King's defense counsel admitted that King had trespassed on the property but argued that the evidence did not constitute burglary. Defense counsel argued that the state had failed to submit evidence demonstrating that King used either force, deception, or stealth to enter the residence, as he entered the residence through an open garage. In response, the state conceded that it could not demonstrate that King used force or deception to enter the residence but argued that it had demonstrated stealth through circumstantial evidence.

#### 5. Jury Questions

{¶22} During deliberations, the jury sent three questions to the court that are relevant to this appeal. First, the jury asked, "Could the judge please explain how they came to a burglary charge?" With the agreement of the state and defense counsel, the court provided a response to the first question: "I cannot answer this question." Second, the jury asked, "Is a lesser charge possible at this point?" The court responded, "there is only one charged offense before you to resolve, burglary, a second-degree felony." Third, the jury asked, "Can the judge explain 'burglary'?" The court answered, "the jury instructions specifically explain the elements of the burglary charged offense, second degree felony."

{¶23} After receiving the court's responses, the jury resumed deliberations and subsequently returned a guilty verdict. King appeals from his convictions for burglary and failure to appear, raising five assignments of error.

#### II. Law and Analysis

#### A. Burglary Conviction: Sufficiency and Manifest Weight of the Evidence

{¶24} King's Assignment of Error No. 1 states:

**{¶25}** DEFENDANT-APPELLANT'S CONVICTION FOR BURGLARY IS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO SATISFY THE REQUIREMENT OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. ALTERNATIVELY, THE JURY'S VERDICT OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶26}** King argues that the state presented insufficient evidence to establish that he acted with stealth in committing burglary. Furthermore, King argues that the jury lost its way in finding that he acted stealthily based on its reliance on a prosecutor's improper argument and lost it way in concluding that he was present at the home with the purpose of committing a criminal offense. We will address the sufficiency argument first.

### 1. Legal Standard – Sufficiency of the Evidence

**{¶27}** Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

### 2. Sufficiency of the Evidence Supporting Stealth

**{¶28}** The state charged King with burglary in violation of R.C. 2911.12(A)(2). That statute provides, "No person, by force, stealth, or deception, shall * * * Trespass in an

- 7 -

occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense * * *."

{¶29} "Stealth" has been defined as any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission. *State v. Raleigh*, 12th Dist. Clermont Nos. CA2009-08-046 and CA2009-08-047, 2010-Ohio-2966, ¶ 69, citing *State v. Hibbard*, 12th Dist. Butler Nos. CA2001-12-276 and CA2001-12-286, 2003-Ohio-707, ¶ 30, in turn citing *State v. Ward*, 85 Ohio App.3d 537, 540 (3d Dist.1993). The state may demonstrate stealth through circumstantial evidence. *Raleigh* at *id.*, citing *In re C.W.*, 12th Dist. Butler No. CA2004-12-312, 2005-Ohio-3905, ¶ 24-26.

{¶30} Upon review, we find that the state presented evidence that was legally sufficient to prove that King used stealth while trespassing. The evidence presented indicated that King entered the home through the open garage, then climbed a ladder inside the garage, then entered the attic. King's act of entering the attic was committed during an ongoing trespass and was an act designed to gain entrance and remain within the home without being discovered. Simply put, the act of entering this home through the attic was stealthy. Additionally, that King was carrying a flashlight during the daylight hours and failed to announce his presence lends additional circumstantial evidence to the conclusion that King was acting stealthily, i.e., he was anticipating operating in darkness and quiet to trespass in a secret, sly, or clandestine manner.

{¶31} King cites several cases that he argues support his position that the state submitted insufficient evidence of stealth. He primarily relies on *State v. Pullen*, 2d Dist.

Greene No. 91CA33, 1992 WL 142271 (June 25, 1992). In *Pullen*, the defendant entered an attached garage through an opened garage door. *Id*. at *2. The entry occurred in daylight. The homeowner caught the defendant leaving through the garage door with a can full of gas in his hand. The court of appeals found that the defendant's actions in going through an open garage door, alone, did not establish force, stealth, or deception. *Id*. *Pullen* is distinguishable. As discussed above, the evidence here showed that King entered the open garage and *then* entered the attic to gain entrance to the home, remain in the home, and avoid discovery.

**{¶32}** King also cites *State v. Isom*, 8th Dist. Cuyahoga No. 78959, 2001 WL 1671432 (Nov. 29, 2001); *State v. Harris*, 6th Dist. Lucas Nos. L-06-1402 and L-06-1403, 2008-Ohio-6168; and *State v. Patton*, 2d Dist. Clark No. 2011 CA 94, 2013-Ohio-961. However, like *Pullen*, these cases only involved evidence of an entry into an open garage and no additional evidence concerning the stealthy way the defendant entered the garage, remained in the garage, or continued the trespass. *Isom* at *3; *Harris* at ¶ 96; *Patton* at ¶ 15.

**{¶33}** At oral argument, King suggested that the time that stealth must be determined for purposes of the burglary charge was the time King entered the garage. King argued that because the court only instructed the jurors that stealth must be employed to "gain entrance," then the jury could only find King guilty if they concluded he used stealth in entering the open garage.[4] However, there is no support for such an argument based on

---

4. The standard jury instruction on "stealth" tracks the language cited above from *Raleigh*, 2010-Ohio-2966 at ¶ 69, which defines stealth as using clandestine means to gain entrance or to "remain within" a structure of another. *Ohio Jury Instructions*, CR Section 511.12 (Rev. Dec. 8, 2012). For reasons that are not clear, the trial court apparently provided the jurors with an older, more limited definition of stealth. The court informed jurors that "stealth means any secret or sly act to gain entrance." Regardless, we have concluded that the state presented sufficient evidence to establish even this more limited definition as the evidence demonstrated that King used stealth to gain entrance to the home by entering through the attic.

the plain language of the burglary and trespass statutes.

**{¶34}** Trespass is defined as knowingly entering or remaining on the land or premises of another without privilege to do so. R.C. 2911.21. Once King trespassed into the garage, he remained a trespasser when he used stealth to gain entrance to the home and remain in the home, entering through the attic. That he may have been only a trespasser in the garage prior to entering the attic would not prevent him from committing burglary by committing a stealthy act during an ongoing trespass. *See State v. Dowell*, 166 Ohio App.3d 773, 2006-Ohio-2296, ¶ 4, 20 (8th Dist.) (finding sufficient evidence of stealth to support burglary conviction where defendant initially walked into an open garage and then was observed "ducking down" to hide from homeowner who honked at the defendant from the homeowner's vehicle). For the foregoing reasons, we find that the state submitted sufficient evidence of stealth.

### 3. Legal Standard – Manifest Weight of the Evidence

**{¶35}** A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

**{¶36}** In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the

weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 12th Dist. Clinton No. CA2020-06-007, 2021-Ohio-466, ¶ 15.

### 4. Weight of the Evidence Supporting Burglary Conviction

**{¶37}** King argues that the jurors lost their way and specifically cites the jurors' questions during deliberations as evidence of confusion. He suggests that the jurors' questions were caused in part by a prosecutor's rebuttal remarks that stealth "does not require an act" and that the jurors could infer that King used stealth because the house was set off and not visible from the road.

**{¶38}** We will address the prosecutor's remarks concerning stealth in more detail in response to King's second assignment of error. However, as described in response to King's sufficiency argument, the evidence of stealth was not simply that Freeland's house was not visible from the road. And the jury was not required to infer that King committed a stealthy act while trespassing. Instead, the evidence showed that King used stealth to continue his trespass into the home by entering the attic. Therefore, we find that the jurors did not lose their way in finding that King acted stealthily.

**{¶39}** King cites *State v. Weber*, 124 Ohio App.3d 451, 464-466 (10th Dist.1997), wherein the Tenth District reversed a burglary conviction on a manifest weight review based on concerns regarding the way the prosecutor summarized the evidence for the jury and where "the trier of fact was asked to draw inferences from facts which, on at least one important issue, lacked an adequate basis." *Id.* at 465. Here, however, the trier of fact had ample evidence, both direct and circumstantial, to indicate that King acted stealthily while

trespassing. Freeland testified that all the doors at the home were locked. The only method of ingress would have been entering through the rotted opening to the garage and then climbing up to and entering the home through the attic. The state presented evidence of a footprint on the workbench in the garage from which King would have had to step to climb the ladder leading to the attic. Freeland testified that he listened to King in the attic and observed King drop down from the attic area. As discussed above, the evidence suggesting King entered the home through the attic, while trespassing, constituted the evidence supporting the burglary conviction.

{¶40} King also argues that the jurors lost their way in finding that he trespassed with the purpose of committing a criminal offense. King contends that the only evidence presented in this regard was Freeland's testimony that King stated he was there looking for marijuana. But King argues that Freeland was not credible and suggests he made up the story about marijuana for the first time at trial.

{¶41} In support of this assertion, King asserts that the police "offense report" did not contain any information about King being on the premises to search for marijuana. However, the police reports and any statements therein were not admitted into evidence and are not otherwise in the record on appeal. Instead, King cites Detective Sergeant Gates' cross-examination testimony where he agreed with defense counsel's assertion that his report did not "mention that this person had also indicated he was there to buy marijuana or look for marijuana or take marijuana or anything about marijuana." The fact that Detective Sergeant Gates' report may not have included information regarding Freeland's statements does not mean that Freeland did not provide such statements separately or that

such information was not contained in other investigative reports.[5]

**{¶42}** Regardless, the jury was free to gauge Freeland's credibility based on his live testimony, his cross-examination, or the examination of other witnesses. We generally defer to the factfinder on matters of witness credibility. *State v. Fitzgerald*, 12th Dist. Clermont No. CA2016-06-044, 2017-Ohio-2717, ¶ 28. Upon review, there is nothing in the record that would make us question the jurors' reliance on Freeland's testimony with respect to establishing that King was on the premises with the purpose of committing a criminal offense.

**{¶43}** In addition, that King brought a flashlight to the premises during daylight hours and entered the premises in the way he did is circumstantially suggestive that he was searching for something to steal. For the foregoing reasons, we find that the jury did not lose its way in convicting King of burglary. We overrule King's Assignment of Error No. 1.

### B. Ineffective Assistance of Counsel

**{¶44}** King's Assignment of Error No. 2 states:

**{¶45}** DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DUE TO THE COMBINED PREJUDICIAL IMPACT OF SEVERAL INSTANCES OF DEFICIENT PERFORMANCE DURING HIS BURGLARY TRIAL.

**{¶46}** King argues that he received constitutionally defective assistance of counsel during his burglary trial, which defective assistance prejudiced him. He asserts four instances of ineffective assistance.

---

5. The state suggests that King is misrepresenting the content of the police report and that it does document Freeland's claims about King's statements concerning marijuana.

**1. Legal Standard – Ineffective Assistance of Counsel**

{¶47} To prevail on an ineffective assistance of counsel claim, King must establish "(1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different." *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 16, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984) and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. The failure to demonstrate either prong is fatal to an ineffective assistance of counsel claim. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 54. In considering an ineffective assistance claim, an "appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective." *State v. McLaughlin*, 12th Dist. Clinton No. CA2019-02-002, 2020-Ohio-969, ¶ 54.

**2. Analysis of Ineffective Assistance Claims**

**a. Failure to Object to Prosecutor's Statements**

{¶48} King argues that his counsel was ineffective for failing to object to two instances of alleged prosecutorial misconduct.

**i. Stating that Stealth "Does Not Require an Act."**

{¶49} First, King claims that the prosecutor "misled the jury regarding the requirements for proving stealth." In support, King refers to his argument in support of his challenge to the manifest weight of the evidence. There, King asserted that the prosecutor "told the jurors that stealth does not require an act."

{¶50} Counsel is given wide latitude during closing argument to present their most convincing position. *State v. Phillips*, 74 Ohio St.3d 72, 90 (1995). And "[p]rosecutors are

entitled to latitude as to what the evidence has shown and what inferences can be drawn from the evidence. A prosecutor may state his or her opinion if it is based on the evidence presented at trial." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 213.

**{¶51}** We have reviewed the portions of the record cited by King in support of the contention that the prosecutor "told the jurors that stealth does not require an act." Nowhere in the record cited does the prosecutor use these words. Nor is this a fair paraphrasing of the prosecutor's remarks. Instead, the prosecutor argued:

> Let's look at all the ways that Mr. King used stealth on that day. You heard from the testimony of Detective Sergeant Gates that that house is not visible from the road. You can't tell it's there standing there from the road. You see a driveway. There's a driveway going back there, a gravel one. From the other direction, he described it as a ravine, inaccessible. He chose a house that could not be seen.

> Next, Defense has described it as just walking in, that you could just walk into the garage. But there was a second step. He had to climb up over boxes, over items, boxes and items that Detective Sergeant Gates said were difficult to get up. It took some effort.

> Not just steps, a ladder to get up to the attic, a ladder that had been affixed to the wall, that he had to climb up to get to the attic where there is a probably 12 to 18-inch plank that he can't just walk across. He had to get down on his hands and knees and crawl across that board before going down through the ceiling.

> He had a flashlight. He didn't announce himself. He didn't say hey, is anyone home? He didn't do that.

**{¶52}** The above statements were fair characterization of circumstantial evidence admitted at trial that the prosecutor believed indicated that King acted stealthily while trespassing in the home.

**{¶53}** Even if the prosecutor had improperly argued to the jurors that "stealth does not require an act," we observe that the trial court properly instructed the jurors that attorney statements are not evidence. Furthermore, the court instructed jurors that they must find

beyond a reasonable doubt that King used stealth to trespass in an occupied structure or a separately secured or separately occupied portion of an occupied structure and that "stealth" means "any secret or sly *act* to gain entrance." We presume that jurors followed the court's instructions. *State v. Rogers*, 12th Dist. Butler No. CA2017-08-112, 2018-Ohio-1356, ¶ 18. For these reasons, we do not find that defense counsel provided deficient performance in failing to object to the prosecutor's remarks concerning stealth and this argument is meritless.

### ii. Whether the Prosecutor Mischaracterized the Evidence

**{¶54}** Second, King takes issue with the prosecutor stating (in the quoted statement above) that King "didn't announce himself." King argues that this was a misleading statement because "there was no testimony on this point" and that this remark "crossed the line of fair argument."

**{¶55}** We find that the prosecutor's remark that King did not announce himself represented a fair inference that could be made from the record. There was, in fact, no testimony that King announced his presence at the secluded home, where a "Private Property No Trespassing" sign was clearly posted. It is clear from Freeland's testimony that Freeland was unaware of King's presence until he heard him crawling above him in the attic. Therefore, it is a fair assumption that King did not announce himself. Counsel did not provide deficient performance by failing to object to either alleged instance of prosecutorial misconduct.

### b. Failure to Request a Lesser Included Offense Instruction

**{¶56}** King argues that his counsel was deficient for failing to request an instruction on misdemeanor criminal trespass and instead pursuing an "all or nothing" defense in which counsel sought to convince the jurors to acquit his client of the burglary charge rather than

present them with the option of a lesser included offense.  Ohio law is clear that great latitude is given to defense counsel regarding trial strategy.  *State v. Murphy*, 12th Dist. Butler No. CA2009-05-128, 2009-Ohio-6745, ¶ 24; *McLaughlin*, 2020-Ohio-969 at ¶ 54.

**{¶57}** Our review of the record reflects that the court and parties discussed the propriety of a lesser included offense instruction in an in-chambers discussion.  Afterwards, and on the record, the court stated that it had indicated to the parties that it would be inclined, if requested, to instruct the jurors on the lesser included offense of trespass in a habitation, a fourth-degree felony.  Defense counsel indicated that he was reconsidering whether he would ask for a lesser included offense instruction based on the in-chambers conversations and that he intended to discuss the issue with King.

**{¶58}** Later, after the court provided the jury instructions, but before the jury returned a verdict, defense counsel put on record that he had informed King that the court was willing to provide an instruction on felony trespass into a habitation. Defense counsel further stated that he had explained lesser included offenses to King.  After that discussion, counsel stated that King decided that he did not want the court to provide a lesser included instruction. King confirmed, on the record, that this was his decision.

**{¶59}** King cannot argue that his defense counsel was ineffective for failing to pursue a different defense strategy than the one that King agreed with and selected at trial. Even if he could argue such, we would not find deficient performance.  It is obvious based on the record that the decision for an "all or nothing" defense was sound.  It appears that at least some members of the jury had difficulty with the burglary charge and were curious about lesser offenses.  The possibility of an acquittal or at least a hung jury was evident. That the jurors continued deliberating and ultimately voted guilty does not mean that the trial strategy was not sound.  For the foregoing reasons, we find that King has not

established defective performance with respect to requesting a lesser included offense instruction.

### c. Failure to Request "Supplemental Instruction"

**{¶60}** King argues defense counsel had a "duty to request a supplemental instruction explaining the element of stealth in more detail" following the jurors' questions during deliberations. He contends that such supplemental instruction should have informed the jurors that stealth and trespass are "two different requirements, and that stealth requires more than unauthorized entry into an open garage."

**{¶61}** Where written jury instructions "clearly and comprehensively" answer a question posed by a jury, a court acts within its discretion in referring the jury back to the jury instructions. *State v. Lindsey*, 87 Ohio St.3d 479, 488 (2000). Here, the court had already provided the jurors with unambiguous instructions defining the elements of burglary. Moreover, the jurors' questions did not specifically ask the court for more explanation concerning stealth. Therefore, we find no abuse of discretion in the court referring the jurors back to the jury instructions. We do not find that King has demonstrated deficient performance in this regard.

### d. Prejudice

**{¶62}** Finally, King argues that all the foregoing instances of alleged deficient performance resulted in prejudice at trial. However, because we have found no instances of deficient performance, King cannot establish ineffective assistance of counsel and thus any argument concerning prejudice is irrelevant. *See Kaufhold*, 2020-Ohio-3835 at ¶ 54. We overrule King's Assignment of Error No. 2.

### C. Failure to Appear Conviction: Sufficient Evidence

**{¶63}** King's Assignment of Error No. 3 states:

**{¶64}** DEFENDANT-APPELLANT'S CONVICTION FOR FAILURE TO APPEAR IS NOT SUPPORTED BY SUFFICIENT EVDIENCE TO SATISFY THE REQUIREMENTS OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**{¶65}** King argues that the state submitted insufficient evidence to permit reasonable factfinders to convict him of failure to appear. Again, when reviewing the sufficiency of the evidence, this court examines whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus.

**{¶66}** King presents three arguments in support of this assignment of error. Finding the second argument dispositive, we address it first.

### 1. Failure to Receive Notice of Court Date

**{¶67}** King argues that the state failed to prove that it informed him of the date and time of the trial. We agree.

**{¶68}** The state convicted King of failure to appear in violation of R.C. 2937.99(A). That statute provides, "[n]o person shall fail to appear as required, after having been released pursuant to section 2937.29 of the Revised Code."[6] To convict a person for failure to appear under R.C. 2937.99, the state "must prove that the defendant knew, or should have known, of the hearing date." *State v. Huckleby*, 4th Dist. Gallia Nos. 16CA15 and 16CA16, 2018-Ohio-4438, ¶ 12.

---

6. R.C. 2937.29 provides,

When from all the circumstances the court is of the opinion that the accused will appear as required, either before or after conviction, the accused may be released on his own recognizance. A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in section 2937.99 of the Revised Code.

{¶69}  The state responds by arguing that "King was noticed personally in Court on May 25, 2021, while reviewing a motion to withdraw counsel/vacate jury trial."  For this proposition, the state points to the portion of the trial on the failure to appear charge where Deputy Clerk Lynch read from the May 25, 2021, entry and specifically from a portion of the entry in which the court wrote that "A copy of this entry is notice of the hearing date."

{¶70}  Upon review, we find there was insufficient evidence presented as a matter of law to permit a reasonable factfinder to find that King knew or should have known of the June 2, 2021 trial.  Despite the state's claims to the contrary, the May 25, 2021 entry does not indicate that King was present in court on the day of that hearing or was verbally advised of the June 2, 2021 trial date.  The words "THE SURETY SHALL IMMEDIATELY BE NOTIFIED OF THIS ENTRY BY THE CLERK OF COURTS" appear on the entry.  However, there is no notation on the entry that it was in fact served on appellant by the clerk of courts.  On cross-examination, Deputy Clerk Lynch admitted that she could not say whether anyone at the clerk's office served King with notice of the trial date.

{¶71}  This is not to say that King was in fact unaware of June 2, 2021 trial date.  The record in the burglary case includes an entry summarizing a March 19, 2021 hearing at which time the court first scheduled the June 2, 2021 trial.  This entry reflects that King was present in court and would have or should have been aware of the scheduling of the June 2, 2021 trial date.  However, the state did not offer this entry into evidence during the failure to appear trial.

{¶72} For the foregoing reasons, we must conclude that the state submitted insufficient evidence to prove that King knew or should have known of the June 2, 2021 trial date.  We sustain King's Assignment of Error No. 3 and we reverse King's judgment of conviction for failure to appear.   We vacate his conviction and discharge him on that

offense.

## 2. Other Issues Raised Regarding the Failure to Appear Charge

{¶73}  In his first issue for review in support of his Assignment of Error No. 3, King argues that the state's use of journal entries to prove the elements of the failure to appear offense constituted an improper application of offensive collateral estoppel.  In his third issue for review in support of his Assignment of Error No. 3, King argues that the state failed to prove that he was released on his "own recognizance."  These issues are rendered moot based on our resolution of King's second issue for review in support of this assignment of error.  Accordingly, we need not address the merits of these additional arguments.  App.R. 12(A)(1)(c).

## D. Remaining Assignments of Error

{¶74}  King's Assignment of Error No. 4 states:

{¶75}  THE ADMISSION OF THE JOURNAL ENTRIES FROM THE BURGLARY CASE VIOLATED THE HEARSAY EXCLUSIONARY RULE AND DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO A FUNDAMENTALLY FAIR JURY TRIAL IN THE FAILURE TO APPEAR CASE.

{¶76}  King's Assignment of Error No. 5 states:

{¶77}  THE TRIAL COURT'S FAILURE TO ADEQUATELY RESPOND TO THE JURY'S QUESTION REGARDING THE CULPABLE MENTAL STATE FOR THE OFFENSE OF FAILURE TO APPEAR DEPRIVED DEFENDANT-APPELLANT OF HIS SIXTH AND FOURTHEENTH AMENDMENT RIGHT TO A FAIR TRIAL AND RELIABLE JURY VERDICT.

{¶78}  Assignments of Error Nos. 4 and 5 have been rendered moot based on our

resolution of Assignment of Error No. 3.  Accordingly, we find these assignments of error moot and they need not be considered.  App.R. 12(A)(1)(c).

### III. Conclusion

**{¶79}**  The state presented sufficient evidence as a matter of law to convict King of burglary.  The evidence showed that King used stealth to enter the home and the conviction was supported by the manifest weight of the evidence.  The state failed to offer sufficient evidence to prove that King knew or should have known of his trial date and therefore his conviction for failure to appear is vacated, and King is discharged on that offense.

**{¶80}**  Judgment affirmed in part, reversed in part.


M. POWELL, P.J., and PIPER, J., concur.